THE HON. WILLIAM L. HOLLOWAY,
⎫
⎬ Associate Justices.
⎭
THE HON. SYDNEY SANNER,

MICHALSKY, RESPONDENT, v. CENTENNIAL BREWING CO.
ET AL., APPELLANTS.

(No. 3,260.)

(Submitted May 21, 1913. Decided June 28, 1913.)

[134 Pac. 307.]

*Personal Injuries—Master and Servant—Unguarded Machinery—Negligence — Proof — Evidence — Instructions—Jury—Inspection of Premises—Presumptions—Special Interrogatories—Discretion—Excessive Verdicts.*

Personal Injuries—Contributory Negligence—Complaint—Sufficiency.
  1.  Allegations of complaint in a personal injury action *held* not to bring the pleading within the rule that where it appears that plaintiff's own act was a proximate cause of his injury, facts must be alleged showing his freedom from negligence in acting as he did when injured.
Contracts—Rescission—When Available.
  2.  A rescission is available where a contract has been made and the consent of the party seeking it actually had, but given by mistake or obtained through duress, menace, fraud or undue influence.
Personal Injuries—Master and Servant—Release—Tender—Pleading.
  3.  Where plaintiff in a personal injury action alleged in his reply that if, as set up in the answer, he signed a writing releasing defendant from any liability in consideration of $50, he did so at a time when he was under the influence of opiates and incapable of assent, he may

not be said to have been seeking a rescission of the contract of release so as to make it incumbent upon him to make a more definite tender of the amount said to have been received by him than he did when he averred that "if the said money was paid for such purpose, he now offers and tenders to defendant the return of said sum."

Same—Evidence—Weight for Jury.

4. Plaintiff's evidence, though unsupported and opposed by the statements of a large number of defendant company's witnesses, *held* sufficient, if credited by the jury, to support a verdict in his behalf.

Same—Negligence in Several Particulars—Proof.

5. Plaintiff who charges negligence in several particulars need not sustain the charge as to all; if actionable negligence is shown in any one of the respects alleged, it is sufficient.

Same—In Service of Master, When.

6. Plaintiff, an employee in and about a brewery, who had been directed to assist in loading beer kegs and lend a hand as required, at the time he was injured was engaged in the service of his master when at the request of a teamster he picked up a pot of paste needed to restore a stamp on a keg before shipping.

Same—Instructions—To be Viewed How.

7. Instructions must be considered as a whole; hence, where the various defenses interposed by defendant in a personal injury action were treated in separate paragraphs of the charge, the contention that by this method the jury were led to infer that defenses not referred to in a particular paragraph were not in the case had no merit.

Same—Instructions—Effect of Evidence.

8. Where weaker and less satisfactory evidence is offered when stronger and more satisfactory is within the power of the party, that offered should be viewed with distrust, is a fundamental canon of proof, and an instruction embodying it is not open to objection.

Same—Instructions—Discovery of Danger—Duty of Servant.

9. A workman, when ordered from one part of the work to another, not being permitted to stop, examine and experiment for himself in order to ascertain if the place assigned to him is a safe one, an instruction that it was the duty of plaintiff to apprise himself of any danger which he could or ought to have discovered by proper examination was properly refused.

[The right of an employee, who accepts extrahazardous duties, to recover for personal injuries, is considered in the note in 97 Am. St. Rep. 884.]

Same—Jury—Inspection of Premises—Presumptions.

10. Where, at the request of defendants (appellants), the jury were taken to view the machinery, then said by the former to be in the same condition as at the time of the accident, it will be presumed on appeal, in the absence of evidence to the contrary, that, in returning a verdict in favor of plaintiff, they found the machinery to have been unguarded as charged by plaintiff.

Same—Special Interrogatories—Discretion.

11. The submission of special interrogatories in personal injury actions, such as whether the place at which the accident occurred was reasonably well lighted, *etc.*, though commendable practice, is nevertheless within the discretion of the trial court, and therefore refusal to submit is not subject to correction on appeal.

Same—Excessive Verdicts.

12. Where plaintiff, by reason of a personal injury, sustained an incurable deformity and suffered permanent impairment of earning capacity as a laborer, a verdict for $7,150, *held* not excessive.

*Appeal from District Court, Silver Bow County; J. Miller Smith, Judge of the First Judicial District, presiding.*

ACTION by Paul Michalsky against the Centennial Brewing Company, a corporation, and another. From a judgment for plaintiff and an order denying them a new trial, defendants appeal. Affirmed.

*Messrs. Kremer, Sanders & Kremer,* for Appellants, submitted a brief; *Mr. Louis P. Sanders* and *Mr. J. Bruce Kremer* argued the cause orally.

If dangers are obvious (and plaintiff so alleges), the law charges knowledge. The law does not require warning from the master where the dangers are obvious. It is the law that if danger be obvious, one may not excuse his own neglect by claiming he was forgetful or absorbed. "If the servant is conscious of the dangers, the fact that he forgets their existence and sustains an injury will not make the master liable." (20 Am. & Eng. Ency. of Law, p. 120 (8) ; *Disano* v. *New England Steam Brick Co.,* 20 R. I. 452, 40 Atl. 7; *Commercial Guano Co.* v. *Neather,* 114 Ga. 416, 40 S. E. 299; *Paoline* v. *J. W. Bishop Co.,* 25 R. I. 298, 55 Atl. 752; *Gallagher* v. *Snellenburg,* 210 Pa. 642, 60 Atl. 307; *Morewood Co.* v. *Smith,* 25 Ind. App. 264, 57 N. E. 199.)

The application of elemental rules to the allegations of fact in the complaint stamps it as defective in substance. If a servant knows of the dangers of his work or in the exercise of reasonable care might have known them, he is deemed to have assumed the risk. When a risk is perfectly obvious, knowledge is by law inferred. Nor do all the allegations of the complaint, undoubtedly inserted to justify an argument that plaintiff did not assume the risks because of the claimed change in the nature of his duties, assist this complaint, for it becomes wholly immaterial that he was ordered to perform more hazardous duties, when the allegations of the complaint are recalled which admit that the dangers of the new employ-

ment were obvious. (*Worthington* v. *Goforth,* 124 Ala. 656, 26 South. 531; *Kentucky Freestone Co.* v. *McGee,* 118 Ky. 306, ·80 S. W. 1113; *North Chicago St. R. R. Co.* v. *Conway,* 76 Ill. App. 621; *Dickenson* v. *Vernon,* 77 Conn. 537, 60 Atl. 270.)

If plaintiff went to work in a dark room, under the conditions he testifies to, on a keg elevator that he knew was in operation, he assumed the dangers. If he had never worked there before and was called upon by the teamster to hand out the paste, he could not grope in the dark and when injured hold anybody liable for consequences except himself. Ordinary prudence demands that one procure a light before taking the chance of becoming entangled with a machine of this kind in operation. The law imposes a duty upon plaintiff which he flagrantly violated. (See instruction 15 in *Nelson* v. *Boston & Montana Consol. etc. Min. Co.,* 35 Mont. 223, 88 Pac. 785; *Russell Creek Coal Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614; *Guinard* v. *Knapp-Stout & Co.,* 90 Wis. 123, 48 Am. St. Rep. 901, 62 N. W. 625.) Nor can plaintiff escape the full force of this obligation by reason of the contention that he was ignorant and inexperienced, for he does not by any sufficient competent evidence sustain the allegations.

The evidence on behalf of plaintiff is insufficient to justify the verdict or to support his contention that he was induced to execute the release through the fraud of defendants. In all cases where a party seeks to annul the effects of a release or settlement for claims for damages, such as was relied on by the defendant in this case, the law requires that the proof be clear, unequivocal and convincing before such instrument is rendered nugatory. (Story's Equity Jurisprudence, 141; *Barker* v. *Northern Pac. R. Co.,* 65 Fed. 460; *Kift* v. *Mason,* 42 Mont. 232, 112 Pac. 392.) Under the facts of this case plaintiff's unreasonable delay to seek a rescission is, in law, equivalent to an affirmance of the release and he is bound by it. (*Fahey* v. *Detroit United Ry.,* 160 Mich. 629, 125 N. W. 704.) Section 5065, Revised Codes, provides that a party must rescind promptly. He has not only failed to rescind promptly, but he has never rescinded

at all.  His attempted rescission is at best a conditional one only, and, as we have shown, a rescission must be complete and entire; it cannot be made upon a contingency as plaintiff endeavors in his replies to make it, that is, a rescission provided certain things are shown.  He admits enough to show that he knew about it long prior to the trial, and under any aspect of the case he retains the consideration, on top of which he recovers a judgment.  (*Hoch* v. *Goodhart,* 31 Misc. Rep. 789, 65 N. Y. Supp. 223; *Marten* v. *Paul O. Burns Wine Co.,* 99 Cal. 355, 33 Pac. 1107; *Mortimer* v. *McMullen,* 202 Ill. 413, 67 N. E. 20; *Bell* v. *Keepers,* 39 Kan. 105, 17 Pac. 785; *Fowler* v. *Meadow Brook Water Co.,* 208 Pa. 473, 57 Atl. 959.)  Upon plaintiff's own admissions, the attempted rescission was not made within a reasonable time, and the question is therefore one for the court so to hold.  (*Martin-Barris Co.* v. *Jackson,* 24 App. Div. 354, 48 N. Y. Supp. 586; *Money Weight Scale Co.* v. *Woodward,* 29 Pa. Sup. Ct. 142.)

"What the jury may observe when sent out to view the premises in dispute can under no circumstances become evidence, nor can the jury take it into consideration otherwise than as affording them means to better understand and apply the evidence adduced."  (*Wright* v. *Carpenter,* 49 Cal. 607, s. c., 50 Cal. 556; *People* v. *Milner,* 122 Cal. 171, 54 Pac. 833; *Machader* v. *Williams,* 54 Ohio St. 344, 43 N. E. 324; *Close* v. *Samm,* 27 Iowa, 503; *City of Grand Rapids* v. *Perkins,* 78 Mich. 93, 43 N. W. 1037; *City of Detroit* v. *Detroit etc. Ry. Co.,* 112 Mich. 304, 70 N. W. 573; *Bigelow* v. *Draper,* 6 N. D. 152, 69 N. W. 570.)

That portion of instruction No. 7 to which defendants objected should not have been submitted to the jury, and it was error on the part of the trial court to overrule the objections made.  Section 8028, Revised Codes, provides that juries are to be instructed in accordance with the provisions of this section on all proper occasions.  The indiscriminate giving of this instruction is condemned by the courts, unless the case presents justifiable reasons, which did not appear herein.  (*Thomas* v. *Gates,* 126 Cal. 1, 58 Pac. 315; *People* v. *Cuff,* 122 Cal. 589, 55 Pac. 407;

*People* v. *Dole,* 122 Cal. 486, 68 Am. St. Rep. 50, 55 Pac. 581; *Wood* v. *Los Angeles Traction Co.,* 1 Cal. App. 474, 82 Pac. 547.)

Plaintiff seeks to repudiate the release and still to retain the money paid under it. He has wholly failed to place defendants *in statu quo.* The rule requiring a party attempting to rescind a contract to do so completely and unconditionally is laid down in the case of *Barker* v. *Northern Pacific R. Co.,* 65 Fed. 460: ''A party defrauded has his option, either to avoid the contract or abide by it, notwithstanding the fraud; but if he elect to rescind, he must do so *in toto,* and restore to the other party whatever he has received upon the contract.'' (*Wiley* v. *Howard,* 15 Ind. 169; *Johnson* v. *Culver,* 116 Ind. 278, 19 N. E. 129; *Westhafer* v. *Patterson,* 120 Ind. 459, 16 Am. St. Rep. 330, 22 N. E. 414; *Johnson School Tp.* v. *Citizens' Bank,* 81 Ind. 515; *Russell* v. *Russell,* 63 N. J. Eq. 282, 49 Atl. 1081; *Cole* v. *Smith,* 26 Colo. 506, 58 Pac. 1086; *Leake* v. *Ball,* 116 Ind. 214, 17 N. E. 918; *Krag-Reynolds* v. *Oder,* 21 Ind. App. 333, 52 N. E. 458; *Morrow* v. *Moore,* 98 Me. 373, 99 Am. St. Rep. 410, 57 Atl. 81; *Marten* v. *Paul O. Burns Wine Co.,* 99 Cal. 355, 33 Pac. 1107.)

*Mr. Alexander Mackel,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The respondent, Paul Michalsky, suffered personal injuries while in the employ of the appellant brewing company and brought this action to recover for the same. As detailed in the last amended complaint, the place of the accident and the manner of its happening are as follows: Near the southeast corner of the company's main building there was a platform from which the delivery wagons were loaded. This platform was about two and a half feet above the floor upon which the kegs or barrels of beer were placed for loading, and the kegs were raised from the floor to the platform by means of a lift. The lift consisted of endless chains to which were attached ''cer-

tain long iron bars or hooks'' so adjusted as to take hold of the kegs or barrels and raise them; and these chains worked over two pulleys or rollers to which power was imparted by means of ''a certain belt, cogwheels, and gear.'' It is alleged that this mechanism, though dangerous, was negligently kept exposed and unguarded; that the place of its operation was insufficiently lighted; that the respondent had been employed for other and safer work in which simple tools and implements only were required and which did not take him near said mechanism; that he was unfamiliar with it; that on the morning of the accident he was ordered by his superior, the appellant Huddel, to leave the work for which he had been employed and to ''help load kegs of beer by means of the aforesaid elevator and hoist'' and to generally ''assist the teamsters in placing upon their wagons all such articles and things as were required by the teamsters to be placed thereon, and to do all other work which it was necessary and proper to do at and near the aforesaid belt, cogwheels, elevator, and hoist''; that he was unskilled, inexperienced, ignorant and uninstructed with reference to the dangers connected with this new work and did not realize them; that in the doing of it he was, as a matter of fact, in constant danger of being brought into contact with the loading mechanism and of being caught by it and injured; that no sufficient or any warning had been given him; that while in the course of this work he was handing some article to a teamster he came into contact with the rapidly moving belt, was caught by the hooks or bars and by them ''forcibly brought in contact with other portions of the machinery, instrumentalities, place, wheels and platform in such manner that he was greatly injured thereby.''

Separate answers were filed denying negligence and affirmatively pleading negligence on the part of the respondent, his assumption of risk, and that after the accident he did for a valuable consideration in money paid by the brewing company, ''and for the purpose of compromising any and all claims of damages,'' make, execute and deliver to the company a full release and satisfaction of all such claims and demands ''and did

further discharge" the company, its agents and employees, from any and all liability in the premises.

In his replies the respondent denied the negligence and assumption of risk imputed to him by the answers, disclaimed any definite recollection of the alleged release, and averred that if he signed anything of the kind he did so while suffering great pain from his injuries and while he was under the influence of opiates and without any understanding or appreciation of what was going on; that not until after the answers were filed and his counsel had inspected the alleged release was he informed of the fact that his signature had been obtained on or about May 14, 1909, to a writing in which for the sum of $50 he purported to release all claims for damages on account of his injuries; that he was about that time visited by defendant Mueller and another, which visit was followed by a visit of his wife; that when his wife arrived he was in possession of $50 which he "now believes was left in his possession by said Mueller''; that she took possession of said money, but "neither she nor this plaintiff knew that the said money was paid as a release in full or any release or satisfaction of plaintiff's claim for damages on account of injuries received as herein stated; and   *   *   * that, if the said money was paid for such purpose, plaintiff now offers and tenders to defendants herein the return of said sum of $50.''

Upon the trial the verdict was for respondent and against the brewing company and Huddel, the damages being fixed at $5,000. Judgment was entered accordingly. Motion for new trial was made and denied. From the judgment and from the order denying the motion for new trial, the brewing company and Huddel have appealed.

1. The first contention is that the complaint "fails to state **[1]** a cause of action under the rule laid down in *Cummings* v. *Helena etc. Reduction Co.*, 26 Mont. 434, [68 Pac. 852], holding that although the absence of contributory negligence need not be pleaded, if the complaint shows that plaintiff's own act was a proximate cause of the injury, it must also state his free-

dom from negligence in doing the act." This rule has been applied by this court in too many cases to admit of doubt as to its existence or meaning. Most of these cases are collated in *Conway* v. *Monidah Trust,* 47 Mont. 269, 132 Pac. 26. A cursory review of them, together with the still later decision in *Nilson* v. *City of Kalispell,* 47 Mont. 416, 132 Pac. 1133, will demonstrate that the allegations of the present complaint do not bring it within the rule. (See, also, *Montague* v. *Hanson,* 38 Mont. 376, 99 Pac. 1063; *Hollenback* v. *Stone & Webster Eng. Corp.,* 46 Mont. 559, 126 Pac. 1058.)

2. It is also contended that the replies are insufficient because "plaintiff seeks conditionally to annul and rescind the release [2, 3] agreement relied upon by defendants," and because a tender of the money received upon the execution of the alleged release is not sufficiently pleaded. We do not construe the replies as seeking a rescission, conditional or otherwise. A rescission is available where the consent of the party seeking the rescission was actually had, but was given by mistake or obtained under duress, menace, fraud, or undue influence. (Rev. Codes, sec. 5063.) To say that rescission is sought is to imply or assume that the party seeking it acknowledges the existence of something to rescind. But the burden of the replies is that if the signature of respondent was in fact procured to any release, it did not represent any assent or act of his mind; that he was at the time not possessed of capacity to assent; that in short there was no contract, and any paper writing purporting to be such should be disregarded. It is entirely beside the question to say that the plaintiff might have acknowledged the contract and sought a rescission upon the ground of fraud. He does not admit the contract, and, as one cannot rescind a contract that he has not in fact made, so one cannot be assumed to seek a rescission where his position negatives the idea of any contract to be rescinded.

So as to the $50 which he admits he found himself in possession of when his wife came, following the visit of Mueller. He "now believes" that Mueller left it, but he did not know that

it was left as payment for any release, and, if it was so left, the return of it is offered. That on the theory of a rescission this would be insufficient as a tender or a restoration to the other party of the benefits received need not be gainsaid; but, if there was no contract to rescind, the principle invoked by appellants has no application; and if, as a matter of fact, the money was a gratuity or was not paid or received as consideration for the release, no return at all was due. In the absence of an admission that the money was paid and received as consideration for the release, and upon the respondent's plea of uncertainty as to who left it and why it was left, we think the replies went quite as far as any rule of good faith in pleading could require.

3. The sufficiency of the evidence to justify the verdict is questioned. Judging from the cold record, it would seem that, [4] as regards all the essentials of liability, the appellants had met and overcome the respondent at every point. Against the bare testimony of respondent, four witnesses testified that it was light at the lift when the accident occurred; four that respondent had worked at this lift several times prior to the accident; three that he had been specifically warned of the danger of coming into contact with the mechanism; two that he actually stepped upon the revolving shaft; and five that after the accident he was conscious and stated that it was due to his own fault. Just why the jury in the first instance, and the trial court on the motion for a new trial, deemed the unsupported testimony of the plaintiff to be superior in weight, force, efficiency or influence to the mass of definite testimony against it, we can only conjecture. It is true that the testimony on behalf of the appellants was given by persons who were or had been in the employ of the appellant company; there was testimony also to the effect that before Mueller and his companion appeared at the hospital on May 14, the occupied cot next to respondent's was moved and an unoccupied one put into its place; that a screen was then placed about respondent's cot; and that pills and injections were administered to him, which

had the effect of making him dizzy, sleepy and without appreciation of what was taking place. It may be that the jury believed all this and believed that it was designed to make it easier to secure from the respondent a release of all claims on account of the serious injuries he had sustained, for the pittance of $50. If they so believed, it was not entirely illogical that they should then discount the value and credibility of all the rest of appellants' case. In any event, the weight of the evidence was for the jury, and we may not disturb their conclusion, if it is supported by evidence sufficient, if credited, to sustain the charge. (*Mattison* v. *Connerly,* 46 Mont. 103, 126 Pac. 851; *Robinson* v. *Cole,* 46 Mont. 140, 126 Pac. 850.) It was not necessary that the plaintiff should sustain the charge of **[5]** negligence as to all of the particulars pleaded, but it is sufficient if actionable negligence was shown in any of the respects alleged. (*Riley* v. *Northern Pac. R. Co.,* 36 Mont. 545, 93 Pac. 948; *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843.)

Now, the testimony of plaintiff is to the effect that he was hired by Mueller to move machinery, which occupation was pursued at a point remote from the keg lift; that he was later put to washing vats; that he had never worked with the keg lift until the morning of the accident; that he had no familiarity with it whatever and no warning of its dangers was given him; that the light in the place was poor; that he was ordered to work at the lift by Huddel, who told him to hurry up and help load kegs and do whatever else might be required; that he was kept busy loading kegs upon the hooks or bars above described; that he had no opportunity to observe the machinery closely and did not know or realize its points of danger; that after he had been there ten or fifteen minutes someone on the loading platform called for the paste, and while respondent was picking up the pot of paste he was struck by a belt which he had not before seen, pushed or dragged into the lift, and injured. All this is within the allegations of the complaint, and it is idle to say that it does not establish negligence *prima facie* or

that contributory negligence or assumption of risk must necessarily be inferred. (*McCabe* v. *Montana Central R. Co.*, 30 Mont. 323, 76 Pac. 701; *Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29; *O'Brien* v. *Corra-Rock Island Min. Co.*, 40 Mont. 212, 105 Pac. 724; *Stewart* v. *Pittsburg & Montana Copper Co.*, 42 Mont. 200, 111 Pac. 723; *Forquer* v. *North*, 42 Mont. 272, 112 Pac. 439.)

The suggestion is made that when respondent was picking up [6] the pot of paste he was not engaged in the business of his employer. We think he was. He had been directed by Huddel to assist in loading and to lend a hand as required. A stamp or label had fallen from one of the kegs; it had to be restored before the keg could go out; and the paste was needed to restore it. In procuring it the respondent was not merely complying with the request of a teamster for paste, but he was doing something necessary to be done in and about the loading of the beer and executing the general orders which had been given him. Appellants attempt to meet this by asserting that Huddel himself was a mere fellow-servant and not a superior; but we cannot give serious consideration to this in view of the allegations of the answers and of the extent of his power and authority as disclosed by the evidence before us.

It is further said: "The evidence on behalf of plaintiff is insufficient to   *   *   *   support his contentions that he was induced to execute the release through the fraud of defendants." What is said above touching this subject as affected by the pleadings applies here. The contention is not that he was induced to execute the release through the fraud of defendants, but that he did not execute it at all and did not accept any money for any release. His evidence is consistent with that position and sufficient, if true, to support it.

4. Error is assigned on the giving of instructions 6, 7, and Z. Instructions 6 and 7 read as follows: "(6) You are instructed that an employer must indemnify his employee, except as prescribed in the next instruction, for all that he necessarily loses in the direct consequence of the discharge of his duties as such,

or of his obedience to the directions of the employer.'' And
'' (7) You are instructed that an employer is not bound to in-
demnify his employee for losses suffered by the latter in conse-
quence of the ordinary risk of the business in which he is
employed.'' These instructions are substantially a reproduction
[7]  of sections 5242 and 5243, Revised Codes, and of course no
error could be predicated upon the giving of them in a proper
case, with the proper limitations. The point made against them is
that the exception made in instruction 6, to-wit, the condition
described in instruction 7, is directed to the assumption of risk
alone, leaving no room for the defenses of contributory negli-
gence or release from liability, and that instruction 7 does not
define what ordinary risks are; in other words, these instructions
tell the jury, in effect, that regardless of the release, if given, or
of contributory negligence, if shown, the plaintiff should recover
unless the accident was due to the ordinary risks of his employ-
ment, whatever they may have been. With equal propriety it
might also be added that instruction 6 does not even require
that the employer should have been negligent. We think that,
considering these instructions alone, there is force in appellants'
contention, although the language in instruction 6 that the loss
for which the employee will be indemnified must be ''in the
direct consequence'' of the discharge of his duties implicitly
excepts contributory negligence. As a general rule, it is excel-
lent practice to follow the statute in framing instructions, tak-
ing care that the language is adapted to the needs of the given
case. Had the court made the exception in instruction 6 broad
enough to cover all the instructions, there could have been no
criticism; but if it would defeat a recovery by the employee
that the employer was not negligent, or that the employee was
negligent, or that the employee released the employer, then
clearly instructions 6 and 7 were inadequate. The instruc-
tions, however, must be taken as a whole (*Stephens* v. *Elliott*,
36 Mont. 92, 92 Pac. 45), and it is incredible that the
jury could have been misled by the merely negative inference
to be drawn from instructions 6 and 7, when they were told in

positive terms by instruction 1 what the issues were, including the special defenses of contributory negligence and the release; by instruction J that, to warrant a recovery, the accident must have been due to some act of negligence alleged in the complaint; by instruction 9 that, if the release was signed in consideration of the sum of $50 which the respondent kept and used after learning that it was paid to him for that purpose, "he cannot now recover in this action"; by instructions U and V that, if the respondent was guilty of contributory negligence, "he cannot recover in this action"; and by the various other instructions what the risks, ordinary and extraordinary, were which, under any possible theory of the case, the respondent could be held to have assumed. Jurors are presumed to have average intelligence and to employ it. No man possessing or employing average intelligence could infer from the instructions as a whole that the defenses of non-negligence, contributory negligence, and release by contract were not in the case. We are therefore disinclined to direct a reversal merely because of the verbal misprision in instructions 6 and 7.

The giving of instruction Z was entirely proper. The statutory provisions touching the effect of evidence should be given [8] in every case. The doctrine that, "if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory is within the power of the party, the evidence offered should be viewed with distrust" is a fundamental canon of all proof. In no case can it be a valid objection to it that any particular party is put by the court under the imputation of having withheld the best evidence available—that is for the jury to say. If in fact he has not, he cannot be adversely affected by the instruction; and, if he has, his is just the case for which the rule was made.

5. There was no error in the refusal of offered instruction K. [9] It asked the court to tell the jury that it was the duty of respondent to apprise himself of any danger which he could "or ought to have discovered by the proper examination" of the machinery. We have repeatedly held that a workman, when

ordered from one part of the work to another, cannot be allowed to stop, examine and experiment for himself in order to ascertain if the place assigned to him is a safe one. (*Kallio* v. *North-western Improvement Co.,* 47 Mont. 314, 132 Pac. 419; *Hardesty* v. *Largey Lumber Co., supra.*)

6. So, also, the court properly refused to instruct the jury that there was no evidence that the machinery was unguarded, as requested by offered instruction X. The respondent says that when picking up the pot of paste he was struck and pushed by the belt, but a guarded belt could not have struck or pushed him. The appellants' witnesses say that he stepped upon the revolving shaft, and he could not have done this if the shaft was covered. All the testimony is that he was loading beer on the hooks attached to the endless chain, and these had to be open for that work to be done. This is evidence enough to furnish the basis for the application to the testimony of whatever the jury may have ascertained on their visit of inspection. At the request of appellants the jury were taken to view the premises and machinery, which appellants said were in the same condition as at the time of the accident. What the jury saw we do not know; but the appellants who made the request cannot now complain if, in the absence of evidence to the contrary, this court indulge the presumption that the verdict is supported by evidence of the unguarded condition of the machinery, assuming that fact to be necessary to give verity to their conclusions. Concerning the effect to be given to an inspection, we adhere to what was said in *Ferris* v. *McNally,* 45 Mont. 20, 121 Pac. 889.

7. The court could very well have submitted to the jury the special interrogatory requested by the appellants: "Was the place at and around the beer elevator reasonably well lighted at the time plaintiff was injured?" The submission of such interrogatories is to be commended, particularly in cases where the answers may be decisive. It has a tendency to keep the jury to the main issues and is often a great aid to this court in ascertaining the precise basis upon which the verdict is made

to stand.   But the submission of such questions is always within the discretion of the trial court, especially where the answer may not necessarily determine the rights of the parties; hence the refusal is not subject to correction by us.   (*Poor* v. *Madison River Power Co.*, 41 Mont. 236, 108 Pac. 645.)

8. After the motion for nonsuit was denied, appellants were permitted to plead and prove that since the accident the brewing company had paid to the respondent monthly sums aggre- [12]   gating $2,100, and the fact that he has been awarded the further sum of $5,000 is characterized as a miscarriage of justice.   Granting that the amounts voluntarily paid by the brewing company were properly shown in mitigation, we cannot say that the jury ignored them.   The respondent suffered griev- ous injuries; he has sustained an incurable deformity and his ability to do physical labor is permanently impaired.   The grand total of the verdict and all that has been paid respond- ent is $7,150.   We have affirmed judgments for more than this for injuries in no wise more serious.

The assignments of error not disposed of by the above are either without merit or are too trivial for consideration as a ground of reversal.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.