ANDERSON, RESPONDENT, v. MISSOULA STREET RY. CO.,
APPELLANT.

(No. 3,791.)

(Submitted July 2, 1917.  Decided July 6, 1917.)

[167 Pac. 841.]

*Personal Injuries—Street Railways—Horse-drawn Vehicles—*
*Rights on Streets and Bridges—Last Clear Chance—Com-*
*plaint—Instructions—Evidence—Sufficiency.*

Personal Injuries—Doctrine of Last Clear Chance—Prerequisites.
  1.  To make the doctrine of the last clear chance applicable to a per-
  sonal injury case, three things must concur: The exposed condition
  of the person injured brought about by his negligence; the actual
  discovery by defendant of his perilous situation in time to avert the
  injury; and the failure of defendant thereafter to use ordinary care
  to avert it.

Same—Street Railways—Horse-drawn Vehicles—Complaint—Sufficiency.
  2.  In an action against a street railway company for injuries
  to plaintiff caused by being thrown from a buggy, the horse at-
  tached to which had become unmanageable while being driven over
  a bridge, the gist of the complaint was that the motorman by his un-
  necessarily fast and noisy driving of a street-car frightened the ani-
  mal and placed the occupants of the buggy in manifest danger, which
  danger, though increased as the car approached, the motorman disre-
  garded.  *Held,* that the pleading was sufficient as against the objection
  that there was no allegation of the peril of plaintiff.

Same—Fright of Animal—Duty of Motorman.
  3.  Instruction that if, as the street-car approached, the horse driven
  by plaintiff showed signs of becoming unmanageable, which con-
  dition was or should have been observed by the motorman, then
  it became his duty to slacken the speed of his car or to stop it,
  if necessary, in order to give plaintiff a better opportunity to control
  the horse, *held* proper under the pleadings and evidence.

Same—Allegations of Negligence—Proof of Any One Sufficient.
  4.  While plaintiff in a personal injury action cannot recover for
  negligence in any respect other than as stated in the pleadings, he is
  not required, where he relies on several particulars of negligence, to
  prove them all—proof of actionable negligence in any of the respects
  alleged being sufficient; hence an instruction that in order to recover,
  it was not necessary for plaintiff to prove that the street-car was go-
  ing at a speed of twelve miles or more at the time of the accident (one
  of the three acts of negligence alleged), was not prejudicially erroneous.

Same—Duty of Motorman—Instructions—Proper Refusal.
  5.  An offered instruction that a street-car need not be stopped even
  at the discovery of the fright of a horse on the street, when that
  fright is occasioned by the usual and ordinary noises of the car, was
  properly refused, since street-cars (or automobiles) must be so operated
  as to prevent doing avoidable injury to others—stopping if and when
  necessary to that end.

Same—Evidence—Sufficiency—Review.
    6. If there is sufficient evidence, if credited, to sustain plaintiff's case, the supreme court will not disturb the verdict of the jury, even though the evidence, when judged from the printed record, seems to preponderate against their finding.

*Appeal from District Court, Missoula County; John E. Patterson, Judge.*

ACTION by Clara B. Anderson, by John G. Anderson, guardian *ad litem*, against the Missoula Street Railway Company. From a judgment for plaintiff and an order overruling its motion for a new trial, defendant appeals. Affirmed.

.  Cause submitted on briefs of Counsel.

*Mr. William L. Murphy* and *Mr. Walter M. Bickford,* for Appellant.

In *Barnes* v. *North Carolina Public Service Corp.,* 163 N. C. 363, 48 L. R. A. (n. s.) 823, 79 S. E. 881, the court said: "It appears from the plaintiff's own evidence that he was not injured by reason of any negligence on the part of the motorman, but by reason of his horses becoming frightened by a street-car operated in the usual method. It is true that he had as much right on the street as the car, but the car had as much right as he did. It was serving the public in the usual and ordinary manner and without unnecessary noise." The same may be said concerning the refusal of the court to give defendant's offered instructions 'D-5' and 'D-9.' These refused instructions are supported by the following authorities: *Singer* v. *Missoula St. Ry. Co.,* 47 Mont. 218, 226, 31 Pac. 630; *Marion City R. Co.* v. *Dubois,* 23 Ind. App. 342, 55 N. E. 266; *Molyneux* v. *Southwest Missouri Elec. Ry. Co.,* 81 Mo. App. 25. The last case is authority for the broad principle that a motorman is not under an absolute duty to stop his car even when notified to do so by the driver of a nervous horse, where no imminent peril is indicated, unless his conduct or the management of his car shows a wanton disregard of the safety of the driver. (*Terre Haute Electric Ry. Co.* v. *Yant,* 21 Ind. App. 486, 69 Am. St.

Rep. 376, 51 N. E. 732; *Flaherty* v. *Harrison,* 98 Wis. 559 , 74
N. W. 360.)    The last two cases stand for the principle that it
is not the duty of a motorman to at once stop or slacken the
speed of his car at the sight of a frightened horse where the
horse is held by his owner in a manner from which it might
fairly be supposed he would be able to control him.    (*M. V. S.
E. R. Co.* v. *Houston,* 29 Ohio, C. C. 358; *Wachtel* v. *East St.
Louis & St. L. E. Ry. Co.,* 77 Ill. App. 465; *Davison* v. *Wilkes-
Barre etc. Traction Co.,* 10 Pa. Super. Ct. 442; *Danville Ry. etc.
Co.* v. *Hodnett,* 101 Va. 361, 43 S. E. 606.)    The last three cases
are all in harmony with defendant's offered instruction D–9.

*Messrs. Mulroney & Mulroney* and *Mr. G. J. Heyfron,* for
Respondent.

MR. JUSTICE SANNER delivered the opinion of the court.

The two portions of the city of Missoula which lie on either
side of the Hellgate River are connected by a bridge 1,023.6
feet long.    The width of the bridge is divided into a main road-
way 28.9 feet wide and two footways—one on each side of the
roadway—and the footways are separated from the roadway by
railings.    Along the center of the roadway is the street-car
track of the Missoula Street Railway Company, and the clear-
ance for vehicles on each side of the track, when a car is pass-
ing, is 10.6 feet.    The bridge is not level, but ascends on a one
per cent grade from the south end for a distance of about 174
feet, whence it descends to the north end.    Its highest point
is about 1.74 feet higher than the south end, and 9.28 feet
higher than the north end.    On the 21st day of February, 1914,
the plaintiff with four companions was riding in a buggy pulled
by a gentle, well-broken horse, crossing the bridge from south
to north; the driver, as was proper, kept to the roadway on the
east side of the railway track, so that street-cars occupying the
track would pass to her left.    The surface of the bridge was
uneven, due to ice, slush and swollen blocks.    "At the time,"
so the complaint alleges, "the buggy in which plaintiff was rid-

ing north on said bridge arrived at a point about 220 feet north of the south end of said bridge, one of defendant's street-cars, coming east along said railway track on South Third Street at a fast and excessive rate of speed, proceeded without stopping from said Third Street on to the south end of said bridge and at a high, fast and excessive rate of speed continued to go north on said bridge and when said car reached the highest point on said bridge, * * * plaintiff was in a buggy about ninety feet north of said car; that at said time the horse that plaintiff was driving became frightened at the approach of said car and began to act in a frightened and nervous manner and to shy sideways; that the motorman operating and in charge of said car saw the frightened and nervous manner in which plaintiff's horse was acting or by the use of the due and ordinary care and caution should have seen same, but regardless thereof said motorman negligently and carelessly rang the bell on his car and kept ringing same, although the rapid approach of said car and the great and rumbling noise it was making and said ringing of the bell on said car frightened plaintiff's horse, and said motorman could and did see that said horse was becoming more frightened as said car approached and said motorman, instead of slackening the speed of said car or stopping it as he should have done, did not slacken the speed of said car or stop it, but negligently and carelessly continued to go at a high, dangerous and excessive rate of speed and at a rate of speed so fast as to violate the ordinances and laws of the city of Missoula, and to ring the bell on said car faster and more loudly as he approached plaintiff until the front end of the defendant's car reached a point even with the rear end of the plaintiff's buggy, at which time the horse which plaintiff was driving having become more frightened as said car approached, became unmanageable and uncontrollable and jumped to the right to avoid said car, and the right front wheel of said buggy struck the railing on the east side of said bridge, breaking said wheel off at the hub; that the horse thereupon continued to be frightened and ran away in a northerly direction across said bridge,

that when said horse reached a point about halfway across said bridge the left front wheel of said buggy was torn off and plaintiff was thrown violently out of said buggy,'' sustaining the injuries for which recovery is sought in this case. The answer amounts simply to a denial of the allegations of the complaint, with an affirmative plea that the car was operated in the usual and proper manner and that it did not come in contact with the buggy or horse. The case was tried to a jury who, after hearing the evidence and the instructions, returned a verdict for the plaintiff upon which judgment was regularly entered. From that judgment as well as from an order overruling its motion for a new trial, the defendant railway company appeals. Reversal.is sought upon four grounds, which will be noted *seriatim.*

I. It is said that certain instructions which incorporated the doctrine of the last clear chance injected a principle of law foreign to the issues and prejudicial to the defendant. The instructions thus assailed are numbered P. 1, P. 5, P. 7 and P. 8; and if they announce and authorize the jury to apply the doctrine of the last clear chance, they are error, for that doctrine was not in the case. To make that doctrine applicable [1] to any case, three things are indispensable, *viz.*: The exposed condition brought about by the negligence of the plaintiff or the person injured; the actual discovery by defendant of the perilous situation of the person or property in time to avert the injury; and the failure of the defendant thereafter to use ordinary care to avert the injury; all these elements must concur or the rule has no application. (*Dahmer* v. *Northern Pac. Ry. Co.*, 48 Mont. 152, 136 Pac. 1059, 142 Pac. 209.) No suggestion occurs in the complaint that the plaintiff's exposed condition was brought about by any negligence of hers or imputable to her.

But none of the instructions referred to announce, or attempt to announce, the doctrine of the last clear chance; they announce, or attempt to announce, the law of primary negligence, the defendant's duty of ordinary care as applicable to

the particular circumstances; and this they did with substantial accuracy so far as any objection appearing in the record discloses.

Instruction P. 1 sets forth the events claimed by the plaintiff as constituting her obvious peril—the basis of her assertion that the defendant's motorman was negligent—and tells the jury that if they find these to be facts, their verdict should be for the plaintiff. The objection to the instruction is "that, while [2] it is a correct statement of the law, under a proper cause, it does not conform to the theory of the case, as disclosed by the complaint or by the evidence, in that there is no allegation or proof of the peril of the plaintiff." The most cursory examination of the complaint, as of the testimony on the part of the plaintiff, would furnish ample refutation of this objection. The point of the plaintiff's whole position, which counsel seems to have lost, is that the motorman by his unnecessarily fast and noisy driving frightened the horse and placed the occupants of the buggy in manifest danger, which danger increased as the car approached, but which danger the motorman disregarded.

P. 5 states an abstract proposition of law, in effect this: That if the motorman, acting as an ordinarily prudent person, would have believed the plaintiff in peril and that he could not pass the buggy with reasonable safety to its occupants, then in passing he did not act with the proper degree of care. The objection to the instruction that "it does not conform either to the allegations of the complaint or the proof ordered with regard to the peril," is manifestly inapt.

P. 7 told the jury that if, as the car approached, the horse [3] showed signs of becoming unmanageable, which condition was or should have been observed by the motorman, then it became his duty to slacken the speed of his car or to stop it, if necessary, in order to give the driver of the horse a better opportunity to manage and control the horse. The objection is "that there was no loss of control of the horse on the part of the driver alleged in the complaint or proven in the evidence; and, second, that there is no suggestion either in the complaint or in

the evidence of the imminence of peril or loss of control." The instruction does not postulate actual, total loss of control; it postulates threatened loss of control, which the evidence shows did become actual and which is clearly suggested in the complaint. It is to be remembered that the affair occurred on a bridge where there was no chance for the driver to turn aside further than she did, and where her room for managing the horse was confined to the narrow space between the track and the rail.

P. 8 is to the effect that if, under the conditions stated, the motorman should have slowed down or stopped his car, it is immaterial as a matter of law whether the injury occurred as the front of the car reached the buggy, or as the rear end passed the horse. The objection "that it covers a state of facts not charged as negligence in the complaint; and, second, because the instruction is not in conformity with the theory of the remaining instructions offered by the plaintiff, nor in conformity with the theory of the last clear chance relied upon in the complaint," is, we must confess, not very plain to us. So far as we understand it, we say the complaint does not proceed upon the theory of the last clear chance; but does, as noted above, present as a fact that the plaintiff was imperiled by reason of the horse becoming restive and unmanageable through fear of the car, noisily approaching from behind.

Much valuable argument is addressed to the proposition that these instructions are wrong in principle—plain misdirections as to the law; but however this may be, it should be clear that they are not open to the objections urged against them and do not inject into the case any principle of law foreign to the issues.

II. The next contention is that the following instruction (P. 18) was incorrect and prejudicial: "You are instructed that [4] it is not essential, in order to entitle the plaintiff to recover, for the plaintiff to prove that the speed of the car was twelve miles an hour or more at the time of or prior to the injury." The objection was "that there is no proof on the part of the

plaintiff of any speed except that in excess of twelve miles an hour, and therefore the instruction is misleading and unnecessary; further, that it is not a correct statement of the law in this case, for the reason that the allegation of speed, there being only one speed alleged in the complaint, is in excess of twelve miles an hour, and the complaint, being definite in that regard, the plaintiff is required to prove at least that speed.'' The theory of this objection is wholly untenable. The complaint charges several particulars wherein the defendant's motorman in operating the car was negligent in view of plaintiff's situation, *viz.:* driving it with unnecessary clamor, driving it at an unreasonable rate of speed, driving it at a rate of speed so fast as to violate the ordinances of the city of Missoula. We have repeatedly held it to be unnecessary for the plaintiff in actions of this sort to prove every particular in which negligence is alleged, but that it is sufficient if actionable negligence be shown in any of the respects alleged. (*Michalsky* v. *Centennial Brewing Co.*, 48 Mont. 1, 134 Pac. 307; *Forquer* v. *Slater Brick Co.*, 37 Mont. 426, 97 Pac. 843; *Riley* v. *Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948.) The rule invoked by counsel that a plaintiff cannot recover for negligence in any respect other than as stated in the pleadings is obviously sound, and as obviously without relevancy here. Although the plaintiff's witnesses testified that the car was going twelve or more miles per hour, those of defendant asserted otherwise. The jury might have preferred the latter opinion and still be convinced that the rate was such as under the circumstances to amount to want of ordinary care. If so, a case was made responsive to the complaint, and the instruction, read in connection with the rest of the charge, was not subject to the objection stated.

III. Error is assigned upon the refusal of defendant's offered instructions D. 2, D. 5 and D. 9. All that is valuable in these instructions was actually given the jury in the charge. D. 5 contains matter which is gratuitous and irrelevant; while [5] D. 9 creates an impression which is positively vicious. A casual reading of the latter would suggest the view that a street

railway company is never required to stop its cars "even on the discovery of the fright of a horse on the street, when the fright of the horse is occasioned by the usual and ordinary noises of the car." It was said, and properly said, in *Singer* v. *Missoula St. Ry. Co.*, 47 Mont. 218, 226, 131 Pac. 630, that "it was not incumbent upon the motorman to stop the car when he first observed the plaintiff approaching from the north, or even when he observed that the horse was becoming unmanageable"; but it is the duty of a street railway company in such circum-. stances to have its cars under such control that they can be stopped when stopping becomes necessary to avoid an accident. The drivers of horse-drawn vehicles have the same right to use the public streets as street-cars or automobiles—neither more nor less; none of them may go blithely along indifferent to the danger of others; but each must be operated so as to prevent doing avoidable injury to others—stopping if and when necessary to that end.

IV. It is finally insisted that the evidence preponderates **[6]** against the conclusions implied by the verdict of the jury. Judging from the cold record we are inclined to agree that this is so; but we did not see the witnesses or hear them testify as the jury who found for the plaintiff did, and as also did the judge who denied the defendant's motion for a new trial. There was evidence sufficient, if credited, to sustain the plaintiff's case, and the rule is too well settled to require any citation of authorities that in such a situation this court will not interfere.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied October 3, 1917.