LISTON, RESPONDENT, v. REYNOLDS, APPELLANT.

(No. 5,346.)

(Submitted November 21, 1923.  Decided February 2, 1923.)

[223 Pac. 507.]

*Personal Injuries—Death by Negligence—Automobile Accident
—Invitees, Guests or Employees—Duty of Driver—Com-
plaint—Evidence—Pleadings—Amendment During Trial—
Variance—Continuance—Excessive Verdicts—Nonsuit.*

Automobiles—Duty of Owner to Invitee.
　　1.　The duty which an automobile owner owes to one whom he in-
vites to ride with him is to exercise reasonable or ordinary care in
the operation of the car, and not unreasonably to expose him to
danger or injury by increasing the hazards incident to that method
of travel.

Same—Ordinary Care—Rule.
　　2.　By reasonable or ordinary care is meant that degree of care
which prudent men skilled in the particular business would be likely
to exercise under the circumstances, the care being proportionate to
the danger.

Same—Negligence—Complaint—Sufficiency.
　　3.　Complaint in an action to recover damages for the death of an
invitee in an automobile accident alleging that the owner of the car
had requested the decedent to ride with him in a race; that after the
race was over defendant did not stop the machine but carelessly,
recklessly and negligently continued to drive the car at a dangerous
rate of speed in an effort to pass another car, causing a collision,
was sufficient to state a cause of action on the ground of negligence,
as against the contention that the decedent having been a trespasser
or licensee the pleading was insufficient for failure to allege willful
injury.

Nonsuit—Failure to Stand on Motion—Appeal.
　　4.　Where defendant did not stand upon his motion for nonsuit but
introduced evidence in his own behalf, thus assuming the risk of
aiding plaintiff's case, the evidence in its entirety will be considered
on appeal to determine whether it is sufficient to sustain the judgment
for plaintiff.

Automobiles—Invitees—Guest or Employee—Degree of Care Required of
Driver.
　　5.　Where the owner of an automobile about to enter a race had
invited decedent to ride with him and instructed him that during
the progress of the race his duties were those of a mechanician, *i. e.*,
to inform him of his position, advise him of the signals given by
those in charge of the race, *etc.*, the invitee's status was either that

---

　　1.　Liability of owner or operator of automobile for injury to guest,
see notes in **Ann. Cas.** 1915D, 345; **Ann. Cas.** 1918B, 1098; **Ann. Cas.**
1918E, 1127; 26 **A. L. R.** 1425; **L. R. A.** 1918E, 1193.

[69 Mont. 480.]

of a guest or employee of defendant, and not that of a trespasser or licensee, and therefore defendant owed him a greater duty than to merely refrain from willfully or intentionally injuring him.

Negligence—Complaint—Necessary Allegations.

6. To constitute a cause of action for negligence there must be shown the legal duty to use care, a breach of that duty, and the absence of distinct intention to produce the precise damage which actually followed.

Same—Gross Negligence—Definition.

7. By gross negligence is meant intentional failure to perform a manifest duty in reckless disregard of the consequences to life or property of another, and implies a thoughtless disregard of the consequences without the exercise of any effort to avoid them.

Automobiles—Complaint—Simple Negligence—Proof of Gross Negligence Admissible.

8. Under an allegation of ordinary negligence recovery may be had upon proof of gross negligence; therefore testimony that defendant after the accident had stated that in driving his car in the manner he did he was endeavoring to put another car out of the race and that in doing so he "got the wrong fellow," indicative of gross negligence as to the safety of the invitee (decedent), was properly admitted as against the objection that it was inadmissible under allegations of simple negligence only.

Negligence—Willful Act Does not Involve Negligence.

9. A willful act involves no negligence, and therefore there cannot be any such thing as "willful negligence."

Trial—Amendment of Complaint During Trial—Variance—Continuance.

10. Where plaintiff at the close of his case in chief was permitted to amend the complaint in a particular which did not change the issues, the claim of fatal variance between the allegations of the complaint and the proof was without merit, and refusal of defendant's motion for a continuance was proper.

Negligence—Death of Minor—Damages Recoverable by Father—Excessive Verdict.

11. In an action by a father to recover damages for the negligent killing of his twenty-year old son in which his recovery was limited to such pecuniary benefit as he might have reasonably expected to receive from the deceased had he lived, a verdict for $5,500 *held* excessive, and scaled to $3,000 in view of the facts that plaintiff was able to maintain himself and family, and that at best plaintiff was legally entitled to the earnings of deceased, who was at the time of the accident earning no more than $40 with room and board, only for a term of a little less than one year.

Trial—Excessive Verdict—When Scaling of Verdict Proper on Appeal.

12. Where an excessive verdict was apparently due to the jury's failure to give due regard to the court's instructions and to calculate the amount recoverable accordingly, the supreme court will scale the verdict to an amount it deems proper and deny a new trial provided the successful party agrees to the reduction; if not, a new trial will be ordered.

---

11. Excessiveness of damages in actions for personal injuries resulting in death, see notes in 18 Ann. Cas. 1209; Ann. Cas. 1915C, 449; L. R. A. 1916C, 820.

*Appeal from District Court, Missoula County; James M. Self, Judge.*

ACTION by Roy Liston against James Reynolds. Judgment for plaintiff and defendant appeals. Judgment modified and affirmed as modified subject to plaintiff's consent.

*Messrs. Murphy & Whitlock* and *Mr. J. E. Kelly,* for Appellant, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

The decedent, from the allegations of the complaint, was either a licensee or an invitee. If he was a mere licensee the rule is clear that the defendant owed him no duty except to refrain from willful injury. This rule was established by this court in the case of *Jonosky* v. *Northern Pac. Ry. Co.,* 57 Mont. 63, 187 Pac. 1014. That case likewise makes the distinction between a licensee and an invitee, pointing out that an invitation is inferred where there is a common interest or actual advantage, while a licensee is implied where the object is the mere pleasure, convenience or benefit of the person enjoying the privilege. We believe that the fair inference to be drawn from the allegations of the complaint is that the decedent was asked to ride, if he wished to do so, merely as a matter of pleasure to himself, in which case he would be a mere licensee to whom the defendant owed only the duty above set forth. Let us assume, however—giving the plaintiff's complaint its most favorable construction—that it can be said that the decedent, if the allegations are true, occupied the position of an invitee. Our court in railroad cases has said that in the case of an invitee or guest the duty owed is to use reasonable care for the guest's safety. (*Glover* v. *Chicago, M. & St. P. Ry. Co.,* 54 Mont. 446, 171 Pac. 278.) This means, however, ordinary care in view of the circumstances and the particular undertaking at hand, and in this case it means ordinary care, having in mind the fact that the guest was to ride in a racing vehicle and engage in a contest of speed

in which ordinary care, as that term is commonly used, is not expected to be and is not used, but where from the very nature of the undertaking chances are to be taken and dangers incurred.

An examination of the authorities will disclose that there is a conflict of authority as to the liability of the operator of an automobile for injury to a guest under ordinary circumstances, leaving out of consideration the racing element which is presented here. The authorities are collected in an exhaustive note in 20 A. L. R., at page 1014, and at 1018 appear a number of cases holding that gross or willful negligence must be shown in order to hold the owner or operator of an automobile liable for injury to an invited guest. Typical cases supporting this rule are: *Epps* v. *Parrish,* 28 Ga. App. 399, 106 S. E. 297; *Massaletti* v. *Fitzroy,* 228 Mass. 487, Ann. Cas. 1918B, 1088, 118 N. E. 168, 18 N. C. C. A. 690.

Our court has not passed upon this question, and if it should adopt the Massachusetts rule as to liability to a guest the sufficiency of the complaint would be thereby determined. But assuming that the court will adopt the rule requiring ordinary care in automobile cases generally, it does not follow that the same rule should apply in a case where the guest voluntarily participates in a race. In fact, we think it is clear that the rule should not apply because it is a contradiction both in terms and in logic to say that a person must use ordinary care in an undertaking which is in its very nature an undertaking where ordinary care cannot be and is not expected to be used.

Our search of the authorities has disclosed no case in which one riding in a race has sought recovery against the driver for alleged negligent driving, but we submit that an analogous situation is disclosed in the case of *Pinckard* v. *Pease,* 115 Wash. 282, 197 Pac. 49, where the driver of an automobile was held not liable to a doctor whom he was taking to the driver's home and who was injured as a result of the skidding of the car when going around a curve on a slippery road. We sub-

mit that the court should hold that whether the decedent from the allegations of the complaint was a mere licensee who was permitted upon his own request to ride, or an invitee, the only duty owed to him under the circumstances was to refrain from willful injury. The same conclusion might be arrived at by stating that in the course of an automobile race any conduct on the part of the driver is ordinary care except willful or grossly negligent conduct, and this we believe to be the rule necessarily resulting from the nature of the undertaking and the peril involved.

Nowhere in the complaint is it alleged that the plaintiff committed a willful wrong. Our court has held that the mere allegation of recklessness is not sufficient to allege willful conduct. A leading case is *Robinson* v. *Helena Light & Ry. Co.*, 38 Mont. 222, 99 Pac. 837. The same rule is applied in the case of *Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226. (See, also, 20 R. C. L. 20.)

The mere happening of the accident is no evidence of negligence here. That doctrine applies only to situations where the injury results from the use of some instrumentality over which the defendant has exclusive control and is based upon the theory that the defendant has the only means of ascertaining the cause of the injury. Leading cases in this state illustrating the application of the doctrine are: *Lyon* v. *Chicago, M. & St. P. Ry. Co.*, 50 Mont. 532, 148 Pac. 386; *Matti* v. *Chicago, M. & St. P. Ry. Co.*, 55 Mont. 2⌐0, 176 Pac. 154; *Heck* v. *Northern Pac. R. Co.*, 59 Mont. 106, 196 Pac. 521. In automobile cases the doctrine does not even apply in the case of a passenger injured by the overturning of the car in the absence of any evidence of negligence. (*Klein* v. *Beeten*, 169 Wis. 385, 5 A. L. R. 1237, see note at page 1240, 172 N. W. 736; note in 12 A. L. R., p. 668.)

Speed alone is certainly no evidence of negligence. (*Hoskins* v. *Northern Pac. R. Co.*, 39 Mont. 394, 102 Pac. 988; *Nelson* v. *Northern Pac. R. Co.*, 50 Mont. 516, 148 Pac. 388.)

Evidence of willful injury in no ways tends to support the complaint which proceeds upon the theory of simple negligence and cannot be considered as making a case for the plaintiff. (29 Cyc. 588, *Haverlund* v. *Chicago, M. & St. P. Ry. Co.,* 143 Wis. 415, 128 N. W. 273; *Astin* v. *Chicago, M. & St. P. Ry. Co.,* 143 Wis. 477, 31 L. R. A. (n. s.) 158, 128 N. W. 265.)

*Mr. Harry H. Parsons* and *Messrs. Mulroney & Mulroney,* for Respondent, submitted a brief; *Mr. R. E. Mulroney* argued the cause orally.

It would seem fairly plain from the complaint that the deceased was at least an invitee and that it could not be fairly inferred that deceased was a licensee, and the law (*Jonosky* v. *Northern Pac. R. Co.,* 57 Mont. 63, 187 Pac. 1014), cited by appellant has no application here.

It is conceded that in the case of an invitee reasonable care must be exercised for the safety of the guest. (*Glover* v. *Chicago, M. & St. P. Ry. Co.,* 54 Mont. 446, 171 Pac. 278; *Montague* v. *Hanson,* 38 Mont. 376, 99 Pac. 1063.) It is also conceded that reasonable care means ordinary care, under the *Montague Case, supra,* and others.

Counsel seems to contend that in this case ordinary care is or was impossible, because of the fact that the invitation here was to ride in an automobile race, which was certainly a dangerous undertaking. We believe that such a contention is not sound in that there is a reasonably careful way or manner of doing almost any conceivable act and a reckless or careless way or manner of doing the same act. Ordinary care or reasonable care is that degree of care which is reasonable under the circumstances of a given case. (*Cameron* v. *Kenyon-Connell Com. Co.,* 22 Mont. 312, 74 Am. St. Rep. 622, 44 L. R. A. 508, 56 Pac. 358.) The following cases also recognize that there is such a thing as care even in speed contests. (*National Motor Vehicle Co.* v. *Kellum,* 184, Ind. 457, 109 N. E. 196; *Lawson* v. *Stockton Motorcycle & Supply Co.* (1915), 2

Cal. Ind. Acc. Com. 628.) So, even in an automobile race, there is and must be such a thing as ordinary care, just as there is and must be in the manner of handling an aeroplane, a boat, a railroad train or any other instrumentality which is potentially dangerous or which may become dangerous under certain circumstances if not properly and carefully handled, or if the circumstances which may arise in the handling thereof are not met with reasonable care.

Counsel goes to a great length to convince the court that the injury complained of was the result of willful negligence, and yet in Montana at least there is no such thing as willful negligence. In the case of *Neary* v. *Northern Pac. Ry. Co.,* 41 Mont. 480, at page 490, 110 Pac. 226, this court stated: "A willful act involves no negligence. It is a contradiction in terms to say that an act was done willfully and negligently." This we submit should be the general rule because it seems impossible that an act could be both. willful and negligent. Negligence implies the lack of willfulness and willfulness precludes the possibility of negligence. So, as to this contention of appellant, we submit that if the defendant's conduct was negligent at all, it could not have been willful, and if it was willful, it could not have been negligent.

Counsel seem to place great reliance upon the case of *Haverlund* v. *Chicago, M. & St. P. Ry. Co.,* 143 Wis. 415, 128 N. W. 273, and cite this case as authority for the proposition that one who pleads ordinary negligence and proves gross negligence must fail. We respectfully submit that this case is not and cannot be authority in the state of Montana, for the reason that in that case the court declares, first, that where there is proof of willful negligence under an allegation of ordinary negligence the case must fail, and likewise this being true, the converse of this proposition must also logically follow, that is, that where one pleads gross negligence and proves only ordinary negligence, there is a failure of proof. This last conclusion of the Wisconsin court in this particular case is absolutely contrary to the rule adopted by this court in the

case of *Neary* v. *Northern Pac. Co., supra.* Using the same line of reasoning used by the Wisconsin court, we believe that if the law as stated in the *Neary Case,* that is, that where one pleads gross negligence and proves ordinary negligence, there is no failure of proof, then it must logically follow that the converse of this proposition is true, that is, that where one pleads ordinary negligence and proves gross negligence, there should be no failure of proof. Where one pleads gross negligence and proves ordinary negligence, he has proved less than he has alleged and yet our supreme court has held that this is sufficient. On the other hand, where one pleads only ordinary negligence and proves gross negligence, he has proven more and a stronger case than he undertook in his pleadings to prove. We submit, therefore, that if the *Haverlund Case* is authority for anything in this state, it is authority for the proposition that, considering the *Neary Case* as sound law, one who pleads ordinary negligence may prove both ordinary and gross negligence. With further reference to the *Haverlund Case,* we respectfully invite the court's attention to the dissenting opinion of one of the learned justices of the Wisconsin supreme court, wherein may be found much common sense and a learned discussion of the proposition involved in that case.

MR. JUSTICE STARK delivered the opinion of the court.

This action was brought by plaintiff to recover damages from the defendant for the death of his minor son, Burnell Liston. The death resulted from an automobile accident which occurred on the county fair grounds at Missoula on July 4, 1921, when certain automobile races were being conducted on a half-mile elliptical track the curves of which were on the east and west ends. The last race of the day, desigmated as a ''free-for-all,'' was for twenty-five miles, and there were about a dozen cars entered, among them being two belonging to the defendant, one of which was driven by a man

named Naegele, and the other by defendant himself. A third car in the race was a green-colored Ford driven by one Zeising.

Burnell Liston rode with the defendant in the race. The plaintiff contends that defendant's car completed the twenty-five mile run ahead of all other cars, but that after finishing and winning the race defendant continued to drive his car at a negligently dangerous rate of speed around the track, and in doing so negligently ran into the Zeising car, which caused defendant's car to veer from its course, run through the outside fence surrounding the track, and kill the decedent.

The defendant's answer denied all allegations of negligence contained in the complaint, and set up affirmatively that decedent's death was due to his own fault and negligence, and arose from injuries, the risk of which he had assumed.

The trial of the cause resulted in a verdict and judgment in favor of the plaintiff for the sum of $5,500. Defendant made a motion for a new trial, which was denied. The appeal is from the judgment.

The circumstances of this case are unusual. No similar one has come to our attention. It was tried and submitted to the jury upon the theory advanced by plaintiff that so long as the race was in progress the decedent assumed all the ordinary risks of injury incident thereto, but that after the race was completed and won by the defendant the ordinary relation of host and invitee arose between him and the decedent, and the former became obligated to exercise reasonable care in the operation of his car, and not to unreasonably expose the decedent to danger and injury by increasing the hazard of his situation.

The defendant's position is that at the time of the accident Liston was at most a bare trespasser or licensee upon the defendant's car; that he had voluntarily assumed all the risk incident to the position which he occupied; that defendant's only duty was to refrain from doing him a willful injury, and that this relation continued to exist after the race had been won by defendant and down to the time of the accident, for

which reason the plaintiff could recover only upon pleading and proving such a willful injury.

1. The first contention made by defendant on this appeal is [1] that the complaint does not state a cause of action for the reason that it fails to allege willful injury.

We think the complaint sufficiently shows that at the time of the accident the decedent occupied the position of an invitee. It says expressly in paragraph 4: That the defendant "requested the said Burnell Liston to ride with and accompany him in the said race in competition with other racers; * * * that said invitation was accepted by said Burnell Liston. * * * " And in paragraph 5: "That said deceased got into said racing automobile, occupied the same and ran the course and race at the special instance and request of the defendant."

In case of an invitee the duty owed is to use reasonable care for the guest's safety. (*Glover* v. *Chicago, M. & St. P. Ry. Co.*, 54 Mont. 446, 171 Pac. 278; *Montague* v. *Hanson*, 38 Mont. 376, 99 Pac. 1063.) We think the rule applies generally to guests riding with the owner or operator of an automobile. As stated by the court in *Perkins* v. *Galloway*, 194 Ala. 265, L. R. A. 1916E, 1190, 69 South. 875: "The express or implied duty of the car owner and driver to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injury the occupant by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business, would exercise for his own protection and the protection of his family and property—a care which must be reasonably commensurate with the nature and hazards attending this particular mode of travel."

In an extended note upon this subject contained in 20 A. L. R., at page 1014, where numerous cases are collected, the writer says: "The rule is established by the weight of authority that the owner or operator of an automobile owes the duty to an invited guest to exercise reasonable care in its opera-

tion, and not unreasonably to expose him to danger and injury by increasing the hazards of travel.''

What is meant by reasonable or ordinary care must be [2] determined from the facts presented in each case. ''But this term is relative; and ordinary and reasonable care—which is, after all, the most that the law requires—means, when used in this connection, that degree of care which prudent men, skilled in the particular business, would be likely to exercise under the circumstances. The care must be proportionate to the danger. What is ordinary care in a case of extraordinary danger would be extraordinary care in a case of ordinary danger, and what would be ordinary care in a case of little danger would be much below this in case of great danger. (Thomp. Neg. 152, and cases cited.)'' (*Diamond* v. *Northern Pac. R. Co.,* 6 Mont. 580, 13 Pac. 367.)

In *Railway Co.* v. *Ives,* 144 U. S. 408, 36 L. Ed. 485, 12 Sup. Ct. Rep. 679 [see, also, Rose's U. S. Notes], quoted with approval in *Cameron* v. *Kenyon-Connell Com. Co.,* 22 Mont. 312, 74 Am. St. Rep. 602, 44 L. R. A. 508, 56 Pac. 358, the court said: ''There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs.''

The complaint sets out that after the race had been won [3] by defendant he negligently failed and omitted to stop or slow down his car, as he should have done; and in the charging part thereof, in paragraph 5 as amended at the trial, alleges that "After the said race had been 'pulled off' and run, as scheduled and intended, around and over said racecourse, the defendant herein carelessly and negligently ran, operated and speeded the said racing car, unnecessarily but in a spirit of recklessness, for about another half mile around said track or course; that at said time and place there were numerous other automobiles and racing cars traveling and running over said course, all going in the same direction as defendant; that, notwithstanding the fact that the race was over so far as defendant was concerned, and many of said cars were running at high speed to win second prize in said contest, this defendant recklessly, carelessly, and negligently ran and operated his said racing car at a high, dangerous, and terrific rate of speed, to wit, over one hundred (100) miles per hour, around and over said racecourse, * * * passing other cars, and carelessly and negligently ran against and collided with one of said competing cars at the easterly end of said course and track, so that defendant's own car was thereby deflected in its course, then and there, and caused thereby; causing his own car to run into and through the outer fence of said track, which was adjacent thereto, and then and there wounded and killed the said Burnell Liston; and that said killing was directly and proximately caused by the defendant's said negligence."

From these allegations it is made to appear that the accident which resulted in Liston's death occurred after the race was finished so far as the defendant was concerned; that after its completion defendant's duty was to slow down or stop his machine; that he carelessly, recklessly and negligently failed and omitted to perform his duty, but, on the contrary, drove his car for a distance of nearly one-half mile at a dangerous and terrific rate of speed amongst other cars, in

endeavoring to pass one of which his car collided with it and caused the accident. These allegations are sufficient to state a cause of action on the ground of negligence.

2. It is next urged that the evidence is insufficient to sustain the judgment. This point was first made by motion for nonsuit at the close of plaintiff's case in chief. Defendant did not stand upon this motion, but introduced evidence in his own behalf, and thus all the testimony in the case is before the court for consideration on this point. (*Pure Oil Co. v. Chicago, M. & St. P. Ry. Co.,* 56 Mont. 266, 185 Pac. 150.)

It is alleged in defendant's answer, and admitted by the reply thereto: "That defendant gave said Burnell Liston permission to ride with him in said race, and that said Liston undertook to observe the signals that should be given from time to time during said race, and to advise the defendant, who was driving said car, of such signals as might be given while the race was in progress, and that the defendant relied upon said Liston to perform this service."

And the defendant testified: "I gave him instructions as to what his position in the race was and what his duties were with reference to me; I told him of his duties as a mechanician and to inform me where I was in the race, and to tell me about my flags and everything of that kind."

Under the pleadings and this proof it is clear that at the time of the accident Liston was at least an invitee and not a trespasser; according to the defendant's statement, decedent was to perform specific services for him during the progress of the race; he was to act as defendant's "mechanician," inform him of his position in the race, advise him of the signals given by those in charge thereof, which would let him know when the race was completed, and perform other similar services.

On this branch of the case the court by its instruction No. 8 told the jury: "You are instructed that, if you believe from the evidence that the deceased, Burnell Liston, asked to be allowed to ride with defendant, and defendant permitted him

to do so, then the only duty owed by the defendant to him was not to intentionally or willfully injure him, unless you further find from the evidence Burnell Liston was an employee, or a guest, of the defendant." By its finding the jury determined the fact to be that Liston was either a guest or an employee of the defendant when the accident occurred, from which it follows that the defendant owed to him a greater duty than to merely refrain from willful or intentional injury.

While defendant argues in his brief. that there was a doubt as to whether the race was over at the time of the accident, we do not think the testimony leaves ground for serious dispute upon this point. It is conceded the defendant received first money for having won, and the testimony of the race officials, as well as others who were spectators, has placed this matter beyond doubt.

By instruction No. 6 the jury was advised: "The court instructs the jury in this case that, if you believe from a preponderance of the evidence that at the time and place mentioned in plaintiff's complaint the defendant, Reynolds, was engaged in racing in an automobile of great racing velocity, that he at the said time won the race in which he was a contestant, that, after the said race had been won by him on said occasion, he, with knowledge thereof, continued at a rate of speed on his own course around the track at a great and high rate of speed, and that such rate of speed was negligent under the circumstances that he made the last-mentioned run, and that in so doing, if he did, he negligently, at a high and dangerous rate of speed, ran into another car, and then into the fence surrounding said race track, at a high, dangerous, and negligent rate of speed, and that as a direct and proximate result of said negligence, on the part of the plaintiff [defendant?], if any there was, the death of Burnell Liston came about, without contributory negligence or assumption of risk on the part of said Burnell Liston, now deceased, then, if you so find your verdict should be for the plaintiff."

If there was doubt in the testimony the finding of the jury in favor of the plaintiff upon this point was fully justified by the evidence, and should not be disturbed.

From the foregoing it appears to be sufficiently established from the proof that at the time of the accident Burnell Liston was in the car at least as an invitee of the defendant; that the race was over, and consequently that the defendant was under the legal duty to use reasonable care for his safety. Without undertaking to set out the evidence in detail, it is sufficient to state that it tends to further establish: (1) That the occasion for great speed was over, because the race was finished so far as the defendant was concerned at the time the accident occurred; (2) that defendant was driving an additional lap, the only real occasion for which was to allow the driver to slow down his car and to get back to his pit with as little inconvenience to and molestation of the other cars on the track as possible; (3) that after passing the judge's stand on his finishing lap defendant slowed down for a considerable distance, and then drove his machine at a rate of speed greater than he had at any time during the race; (4) that he attempted to pass the Zeising car on the east curve in the track when the collision occurred; (5) that at the point where the defendant tried to pass the Zeising car on this curve the track was rough and rutty, and apt to cause a car to skid, which fact was known to the defendant; (6) that it was poor practice to pass a car on a turn, and that the general rule was not to do so; (7) that the Zeising car was particularly dangerous because it skidded so much and threw tires. This proof was sufficient to entitle the plaintiff to have his case submitted to the jury upon the theory of negligence, and to sustain a judgment based thereon.

3. Beatrice Day Roberts, sister of the deceased, called as a witness on behalf of the plaintiff, testified that about a year after the accident she was present and overheard a conversation between the defendant and Mrs. Liston, mother of the decedent, in the course of which, referring to the circumstances

of the accident, defendant said in substance that he had finished the race and had started on this extra lap as was customary, but that he had lost track of the other cars, and did not know how they stood; that he intended to make this other lap so as to enable Naegele, who was driving his second car, to win second money; *that he was fixing to lay out the Zeising car to accomplish that end; that he was after Zeising's car to put him out of the race, but that he got the wrong fellow; that he picked up speed in order to put Zeising out of commission.* Mrs. Liston also testified to substantially the same statements.

At the close of Mrs. Roberts' testimony, defendant moved to strike out all of the testimony of these witnesses in so far as it pertained to the statement that defendant deliberately ran into the Zeising car for the purpose of putting it out of the race, and at the close of all the testimony moved to strike out and take from the consideration of the jury all evidence showing or tending to show that the defendant deliberately or willfully sought in any manner to bring about the accident which resulted in the injury and damage. Both motions were overruled, and the question is thus presented whether the court erred in allowing the italicized portion of the above-quoted testimony to be considered by the jury. Just prior to the time of the making of the last of these motions, counsel for plaintiff announced to the court "that plaintiff did not rely upon willful or intentional injury or willful negligence."

Counsel argue that this evidence tends to prove a willful **[6-8]** injury; hence was not admissible under a complaint based on negligence only. An analysis of this testimony, however, will disclose that the injury resulting in the damage complained of was not willfully committed, although the act which brought it about was willfully committed. A willful act does not necessarily imply a willful injury. In 1 Shearman & Redfield on the Law of Negligence, section 5, it is said that to constitute a cause of action for negligence there must be shown (1) a legal duty to use care, (2) a breach of that

duty, (3) the absence of distinct intention to produce the precise damage, if any, which actually follows. In section 6 of the same volume, the distinction between negligence and willful injury is so well stated and illustrated that we quote at length therefrom: "The inadvertence which marks the distinction between negligence and willful injuries relates to the damage, rather than to the act which causes the damage. Thus, a railroad engineer may willfully shut his eyes and go to sleep. If, while thus asleep, he runs over a man, the test which would determine whether his act was merely gross negligence or was a willful injury would be to ascertain whether, when he closed his eyes, he saw the man upon the track or believed that he would be there, or not. If he believed that he would inflict the injury, or if he intended to do it, his act would cease to be mere negligence, but not otherwise. * * * So, if a mischievous boy should strike a horse for the very purpose of making it run away, his act would be one of willful injury as to the owner of the horse, but only of negligent injury as to a child run over by the horse, in a distant street."

Applying these illustrations to the testimony under consideration, it clearly appears that when Reynolds said he was fixing to lay out the Zeising car for the purpose of putting it out of the race, and that he picked up speed in order to put Zeising out of commission, but that he got the wrong fellow, the result of his action was the same as the boy's who struck the horse for the very purpose of making it run away. As to Zeising, whom he intended to injure, his act was willful, but as to Liston, who was his guest in the car, it was negligent. That is, Liston occupied the same relation to the series of events as the child in the distant street in the illustration quoted. If we assume that the statement that "he got the wrong fellow" had reference to Liston, and no other inference seems permissible, it affirmatively discloses an absence of intention to inflict the particular injury complained of in this case.

Under the law of this state a difference in degrees of negligence is recognized. (See secs. 7768, 7810, 7815, 7821, 7845, 7868, 7869, 7853, Rev. Codes 1921.) This was clearly pointed out in the case of *John* v. *Northern Pac. Ry. Co.*, 42 Mont. 18, 32 L. R. A. (n. s.) 85, 111 Pac. 632. Manifestly it is practically impossible to draw an exact line of demarcation between what is designated as "ordinary negligence" and what is designated as "gross negligence." An examination of excerpts from decisions under the title "Gross Negligence" in Words and Phrases shows a veritable maze of definitions of the term. The supreme court of Michigan, in *Construction Co.* v. *Railway Co.*, 173 Mich. 1, 138 N. W. 320, said: "By gross negligence is meant intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exercise of any effort to avoid them." Substantially the same definition is approved in many other cases quoted in the above-mentioned volumes. The statements attributed to the defendant in the testimony of these witnesses obviously bring his acts within the above definition of "gross negligence."

In this connection counsel cite and rely upon the case of *Haverlund* v. *Chicago etc. Ry. Co.*, 143 Wis. 415, 128 N. W. 273. The plaintiff in that case was injured while attempting to board one of defendant's trains. The complaint charged ordinary negligence. At the trial the plaintiff testified that as she stepped on to the car her foot slipped from the car step to the depot platform, and that as she was so falling, the brakeman who stood on the car step "jumped up and grabbed me with both arms, and kind of throwed me around against the iron banister * * * that went up the steps, * * * and he hit this hip against the bar. * * * He throwed me against the baluster awful hard. I tried to get up on to this foot, * * * but he just took me * * * kind of dragged me in the aisle, and set me in the second or third seat in the car." In response to special interrogatories sub-

mitted to them, the jury found that defendant's brakeman ought reasonably to have foreseen that some injury might probably result to plaintiff from the manner in which he assisted plaintiff up the car steps and into the car, and that the brakeman in taking hold of and assisting plaintiff up the steps exerted force upon the plaintiff in a willful and wanton manner, either intentionally or without regard to whether she might or might not suffer personal injury through his acts. The lower court, in awarding judgment on the verdict, considered these findings as establishing the fact that the brakeman's conduct amounted to gross negligence, and awarded plaintiff judgment on the theory that "in a suit alleging want of ordinary care on the part of the defendant there is not and cannot be any inconsistency in logic or in principle or any harm to the defendant in allowing a recovery for any sort of wrong which betokens lack of that carefulness which the law demands"; that it was immaterial whether the breach of duty amounted to ordinary negligence or to willful and wanton disregard of duty which is known as "gross negligence." Upon appeal the supreme court reversed the cause for the reason that the lower court had adopted an erroneous theory in submitting the case to the jury. The reason for this ruling is stated in the first paragraph of the syllabus in these words: "A complaint charging * * * negligence, based on a want of ordinary care, is not sustained by proof of willful injury or such reckless and wanton disregard of another's rights as is equivalent to willful injury, which is termed 'gross negligence,' for the two wrongs are not of the same character, but are distinct legal wrongs."

Following the same line of reasoning the Wisconsin court, in the earlier case of *Wilson* v. *Chippewa Valley E. Ry. Co.*, 120 Wis. 636, 66 L. R. A. 912, 98 N. W. 536, held that the converse of the rule announced in the *Haverlund Case* was also true; that under a complaint charging gross negligence a recovery could not be had upon a showing of ordinary negligence.

[69 Mont. 480.]

In these cases the court held that the words "gross negligence" mean willful injury, or such reckless or wanton conduct as is equivalent thereto. They have not, however, been given such a meaning in the decisions of this court. In *Neary* v. *Northern Pac. Ry. Co.,* 41 Mont. 480, 110 Pac. 226, it was said: "A willful act involves no negligence. It is a contradiction in terms to say that an act was done 'willfully and negligently.'" And later on in the opinion: "We are of opinion that, under an allegation of gross negligence, any lesser degree of negligence may be relied upon for recovery." It must logically follow that the converse of that proposition is true; that under an allegation of ordinary negligence recovery may be had upon proof of gross negligence.

In *Robinson* v. *Helena L. & Ry. Co.,* 38 Mont. 222, 99 Pac. 837, this court said: "The rule contended for by counsel that, where the allegation is of willful or wanton wrong, proof of simple negligence will not justify a recovery is, we think, founded upon correct reason, and is supported by the great weight of authority"—citing cases.

It thus appears that the doctrine of the Wisconsin cases is in harmony with the rule of decision laid down in our own cases, the only difference being in the meaning given to the words "gross negligence."

For the reason that the testimony under consideration did not tend to establish a willful injury to the decedent, but did tend to show gross negligence, it was properly admitted under the allegations of plaintiff's complaint, and there was no error in denying the motion to strike it out. The statement [9] of counsel at the close of all the testimony "that plaintiff did not rely upon willful or intentional injury or willful negligence" did not militate against the propriety of the court's ruling, since, as we have shown, there was no evidence of willful or intentional injury, and there is not under our decisions any such thing as "willful negligence."

4. At the close of all the testimony counsel moved the court [10] to direct a verdict for the defendant and against the

plaintiff upon the ground, amongst others, that there was a fatal variance between the allegations of the complaint and the proof offered. This motion was overruled. At the close of plaintiff's case in chief the court had permitted counsel to amend paragraph 5 of the complaint. As thus amended this paragraph is set out in the first subdivision of this opinion. Prior to amendment this paragraph of the complaint, immediately following the words "over one hundred (100) miles per hour," charged that defendant, "by reason of said carelessness and negligence, steered, guided and permitted said racing-car to run into a fence, which was then and there adjacent to said track," and caused the injury complained of.

A consideration of this amendment leads to the conclusion that the same did not change the issues in the case, but that all the testimony given at the trial was properly admissible under the complaint as it stood prior to the amendment, for which reason the rights of the defendant were not infringed by permitting the same to be made; and for the same reason there was no error in denying defendant's motion for a continuance after the amendment was made.

5. This action is based on section 9075, Revised Codes of 1921, which gives a father the right to maintain an action for the death of a minor child when the same is caused by the wrongful act of another. Section 9076 provides that in such an action "such damages may be given as under all the circumstances of the case may be just."

It is to be remembered that under the pleading and proof [11] the plaintiff's right of recovery is limited to such pecuniary benefit as he might have reasonably expected to receive from the deceased had he lived. The priceless value at which the plaintiff held the life of his son is not here involved, but only the pecuniary loss which he sustained by his death. The testimony disclosed that the deceased, Burnell Liston, was twenty years and eleven days old at the time of his death, in good health, sober, industrious, ambitious, affectionate, devoted to his parents, unmarried and not en-

gaged to be married. He had worked at various employments, having been at one time on the police force in the city of Missoula, at another time employed in a garage in the same city, in which employment he had earned as high as $135 per month. During these times he had lived at home and had contributed sums ranging from $20 to $60 per month, toward the family expenses. At the time of his death he was employed on a ranch near Missoula, and was earning $40 per month with his board and room. Whether he was at this time giving any portion of his earnings to his father is not disclosed.

At the time of the trial plaintiff was an able-bodied man, forty-seven years old, in good health, and employed as a grocery clerk. His family consisted of himself, his wife, and a married daughter. It was not shown but that he was amply able to maintain himself and family by his own efforts. His life expectancy was 23.08 years, and that of the deceased was 42.20 years. The testimony showed that an annuity of $100 for a man of plaintiff's age would cost $1,438.42. Plaintiff testified that, on the assumption that deceased was earning $135 per month, it would cost him $100 per month to support himself, and he would be able to give plaintiff $35 per month on that basis. This would be $420 per year. The verdict was for $5,500. Based on the figures above given, this would purchase an annuity for plaintiff slightly in excess of $375, payable for the balance of his life. Is this amount excessive?

The jury was instructed that if they found the issues in favor of plaintiff they might award him such damages as under all the circumstances would be just, and that in fixing the amount they might, in their discretion, fix the same at such a sum as would be required to purchase an annuity equal in amount to that which it might reasonably be expected that the deceased would contribute yearly to the plaintiff during the period of expectancy of plaintiff's life. They were further instructed that they could not allow plaintiff

any damages for mental anguish, grief or suffering, or loss of companionship and association with the deceased.

Taking into consideration the fact that the plaintiff was legally only entitled to the earnings of ·the deceased for a period of a little less than one year at the time of his death, the ability of the plaintiff to maintain himself and family, and the consequent improbability that the deceased would, after his majority, be expected or compelled to contribute for that purpose, as well as the earning capacity of the deceased as shown at the time of the trial, we are led to the belief that the testimony does not warrant the conclusion that the plaintiff might reasonably have expected to receive the sum of $375 per year from the deceased so long as plaintiff lived. That is what the verdict amounts to.

From a careful study of the record we are satisfied that the evidence indisputably shows a clear liability on the part of the defendant, and a new trial on that feature of the case is not necessary.

We are likewise satisfied that the excessive amount awarded [12] by the jury must have been due to the fact that they failed to give due regard to the instructions of the court and to calculate the amount of their award accordingly. Under such circumstances this court has in numerous cases felt that it was its duty to reduce the amount of the verdict to what it has deemed the plaintiff was justly entitled, among these cases being *Hall* v. *Northern Pac. Ry. Co.*, 56 Mont. 537, 186 Pac. 340; *Conway* v. *Monidah Trust,* 51 Mont. 113, 149 Pac. 711; *Chenoweth* v. *Great Northern Ry. Co.*, 50 Mont. 481, 148 Pac. 330.

Giving the meager testimony on the matter of damages which the record contains its full effect, we are of the opinion that the sum of $3,000 will fully compensate plaintiff for all pecuniary loss which it can reasonably be said he sustained. In the case of *Gilman* v. *Dart Hardware Co.*, 42 Mont. 96, 111 Pac. 550, where the showing of damages was much stronger

than in this case, a jury considered that such an amount was ample.

As pointed out in *Griffin* v. *Chicago, M. & St. Paul Ry. Co.,* 67 Mont. 386, 216 Pac. 765, it is desirable to end litigation as speedily as may be, and to that end it is ordered that this cause be remanded to the district court, with directions to grant a new trial thereof upon the question of damages only, unless the plaintiff shall within fifteen days after the *remittitur* is filed in the district court consent in writing to a reduction of the amount of the judgment to the sum of $3,000. If such consent is given, the judgment will be modified accordingly, and as so modified will stand affirmed. If such consent be not given, the court is directed to grant a new trial upon the matter of damages only. Each party will pay one-half the costs of this appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.