BURNS, Respondent, *v.* EMINGER, Appellant.

(No. 6,413.)

(Submitted February 19, 1929.   Decided March 26, 1929.)

[276 Pac. 437.]

Mr. *John K. Claxton* and Mr. *R. F. Gaines,* for Appellant, submitted an original and a supplemental brief; Mr. *Gaines* argued the cause orally.

Mr. *T. E. Downey* and Mr. *N. A. Rotering,* for Respondent, submitted a brief; Mr. *Rotering* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment awarding plaintiff $2,500 damages for the death of his minor son, resulting from a collision between a sled on which the boy was coasting, with a delivery truck owned by defendant and driven by one Roy Quinton.

Except as to the allegations of contributory negligence and the plea of *res adjudicata,* the pleadings are, in all essential particulars, the same as those in *Burns* v. *Eminger,* 81 Mont. 79, 261 Pac. 613, wherein judgment for plaintiff, as administrator of the boy's estate, was affirmed. Defendant, however, contends that the evidence differs materially from that adduced on the trial of the estate's suit, in that it shows that the accident occurred on a public highway and off of the public playground described in the pleadings, and further shows that Quinton was neither ''cutting across'' the playground nor driving up an icy incline.

As shown by a map introduced in evidence and by the evidence adduced, the territory involved in this suit extends 400 feet west of North Jackson Street in the city of Butte, and includes the strip of land which would be Copper Street, if extended west from North Jackson Street; the south half of a platted block to the north of this strip; platted lots to the

south of the strip, 100 feet deep, facing on Jackson Street and bounded on the west by an alley; and vacant unplatted surface ground of the Silver King lode, extending from this alley west. In 1923 the city council secured consent in writing from the owners to use a portion of this surface ground, bounded on the north by the north line of the lode, as a public playground. On the half block north of Copper Street if extended, the last lot to the west is occupied by a dwelling known as "the Shea house," the fifth lot east is occupied by a dwelling known as the "O'Neill house," the lots between the two, 120 feet in width, being vacant. The south wall of the Shea house is approximately 17 feet north of what would be the north line of Copper Street, if extended. The north line of the Silver King lode is not exactly parallel with the south line of the lots above mentioned; it passes within 3 feet of the southwest corner of the Shea lot and within 10 feet of the southwest corner of the O'Neill lot. Thus that portion of Copper Street, if extended, past these two dwellings, would lie almost wholly within the Silver King lode. Copper Street has never been platted or laid out west of North Jackson Street, and, according to the overwhelming preponderance of the evidence, no vehicles ever passed over this strip from the Shea house to the O'Neill house until after the city filled in an impassable gulch across it for the purpose of preparing the playground; the fill being made in 1923 and thereafter. In making this fill, city trucks made trails across the ground which were thereafter traveled to some extent by the public.

In addition to use of the playground by children, young workingmen, in season, used it evenings as baseball, basketball, and football grounds. They did not confine the grounds to the surface of the Silver King lode, but extended them into the vacant lots above mentioned, between the Shea and O'Neill dwellings, and, for their accommodation, the Montana Power Company placed arc-lights on the playground; but one of these lights is upon the surface ground of the

Silver King lode donated for playground purposes; one is in the middle of what would be Copper Street, if extended, and to the east of the O'Neill house; one stands in the center of the vacant lots mentioned, 30-odd feet north of the south line of the lots.

In the winter a portion of the surface ground of the Silver King lode is converted into a skating rink, bounded by cinder embankments to retain the water; the north embankment being, at the time of the accident, 50 or 60 feet south of the north line of the lode, and a steep incline extending from Jackson Street down what would be Copper Street, if extended, to a point just west of the O'Neill house, is used for coasting. At the time of the accident, these two areas and the intervening space were coated with ice, caused by flooding engineered by city employees. Sleds descending the "coasting hill" would be carried by their momentum out over level ground toward the Shea house, or their riders could turn southwest at the O'Neill house, or just beyond, thence across the intervening space to the cinder embankment, where a "jump" was arranged, giving the effect of "ski jumping" on to and across the skatink rink. Thus it appears that the playground, as maintained by the city and used by the young folks, was not confined to the allotted surface ground of the Silver King lode.

Some time after 5 o'clock P. M. on the day of the tragedy, Quinton was making deliveries to the north and west of the Shea house, and was then called upon to go to defendant's residence on North Jackson at the extreme southeast corner of the territory above described. In order to save time, instead of driving east, on a regularly established street, to North Jackson, then down Jackson to defendant's residence and around to the rear through the alley, he attempted a short cut south to the Shea house, swinging around a post set at the southwest corner of the lot and headed east, this would bring him well on to the surface ground of the Silver King lode. He drove east to a point about 40 feet west of the

O'Neill house; here, as the north line of the lode was 10 feet south of the O'Neill line, he may or may not have been on the lode surface when the Burns boy was seen by Quinton approaching on his sled at about 20 miles an hour and at a distance of about 45 feet. Quinton turned his truck facing north and stopped. Witnesses for the plaintiff say that, in stopping the truck, which was without chains, Quinton slewed to the east and while slewing struck the sled and boy. Quinton and certain witnesses for the defendant say that the truck did not slew, and was standing still when the boy ran into it.

There is considerable evidence to the effect that Quinton did not sound his horn and was not keeping a lookout, but was watching the boys skating on the rink; this testimony being disputed by Quinton. The evidence is in conflict as to whether the boy turned toward the north just prior to striking the rear of the truck or turned south in an effort to avoid it; but it is admitted that, had Quinton driven a foot or so farther north instead of stopping his car, the accident would not have happened. Four of five witnesses marked on the plat placed in evidence the spot where the boy fell; this mark would indicate that the accident occurred more than 50 feet south of the north line of the lode.

Counsel for defendant say that the witnesses were misled by the fixing of the point with reference to the lower arc-light, which had been moved between the time of the accident and the making of the map, but, while testifying, these witnesses fixed the point with reference to the cinder embankment to the rink, and the south line of Copper Street, if it had been extended, and the designated spot on the map coincides with this testimony. All of the witnesses testified that the boy did not roll to exceed two or three feet after striking the truck, and all testified to fixing the place of the accident by a large spot of blood on the ice. Quinton fixed the place of the accident as just north of the north line of

the Silver King lode and the spot of blood as 10 or 12 feet south thereof, on the lode claim.

The defendant testified that the trail from the Shea house east had been used for general travel for more than 10 years, thus contradicting five or six witnesses for the plaintiff. At the close of plaintiff's case, defendant moved for a nonsuit and at the close of all of the evidence moved for a directed verdict; after judgment, he moved for a new trial. Each motion was overruled.

1. Defendant's first specification of error is predicated upon the overruling of his objection to a question propounded to the county surveyor which counsel say called for the conclusion of the witness as to whether or not the place of the accident was on a public road or highway. The record is not clear as to what question and objection are intended by the specification of error. The witness was first asked, ''Do you know of your own knowledge whether or not that is a public road or highway?'' to which the objection that the question called for a conclusion of the witness was interposed and overruled. After some discussion, an answer was given and stricken by the court, and finally, after considerable preliminary questioning to show knowledge, the witness was asked if, from his own knowledge, he could say whether or not on the date of the accident that part of West Copper Street, if extended, was *used* as a *public* road or highway, to which question a like objection was interposed and overruled. The question as finally framed and answered was not objectionable, and therefore no prejudicial error was committed in the first instance.

2. Defendant next predicates error upon the court's action in sustaining an objection to his offer of the judgment-roll in the case of *Burns, Admr.,* v. *Eminger,* supra.

Defendant had set up as an affirmative defense that plaintiff was a beneficiary under the former judgment; that the facts here were the same as there; and that therefore the judgment was a bar to plaintiff's recovery in this action.

These allegations were denied by reply. The record discloses no statement made as to the purpose of the offer, and it must be presumed that it was made solely in support of the plea of *res adjudicata.* On this ground there is no merit in the assignment.

In the case of an injury to a minor, there arise two causes of action—one in favor of the minor; the other in favor of the parents for loss of services during minority. In case of death, the action in favor of the minor survives and may be prosecuted by his administrator. (*Melzner* v. *Northern Pac. Ry. Co.,* 46 Mont. 162, 127 Pac. 146; *Burns, Admr.,* v. *Eminger,* above.) The independent action by the parent is authorized by section 9075, Revised Codes of 1921. (*Liston* v. *Reynolds,* 69 Mont. 480, 223 Pac. 507.)

The recovery by a parent, as guardian *ad litem* of a living child, or as administrator of the estate in the surviving action, is no bar to a recovery by the parent in his own right for the damages which he has suffered by reason of the injury to his child. (*Harris* v. *Puget Sound Electric Ry.,* 52 Wash. 299, 100 Pac. 841; *Henry* v. *Missouri etc. Ry. Co.,* 98 Kan. 567, 158 Pac. 857; 34 C. J. 852, and cases cited.) An exception has been made to this rule in cases where the parent, as administrator, is sole beneficiary (*Tennessee etc. Ry. Co.* v. *Watts,* 1 Tenn. Civ. App. 347), or where the recovery was for his sole benefit and he included in his action as administrator the item of his loss of the earnings of the minor (*McGovern* v. *New York Cent. & H. R. R. Co.,* 67 N. Y. 417), but no such case is here presented.

The defendant now asserts that the judgment-roll should have been admitted for the purpose of showing that the plaintiff benefited by the former judgment, as bearing upon the amount of damages which should be awarded. Under the exception above noted, such a showing might be proper, but, as the question was not raised at the time the offer was made, the trial court cannot now be put in error on a theory presented for the first time in this court.

3. Defendant asserts that the court erred in denying his motion for judgment of nonsuit and his motion for a directed verdict. Under this head it is argued (a) that the evidence shows that a public highway was established by user; (b) that the accident did not occur on the playground; and (c) that plaintiff failed to show that the defendant's negligence was the proximate cause of the injury.

(a) From the evidence adduced it might be said that a ▇ way by prescription had been established from the corner of the O'Neill house north and east to alleyways duly established and perhaps through to North Jackson Street; but defendant's own evidence falls short of establishing a road by prescription between the Shea house and the O'Neill house, along what would be Copper Street, if extended, under the rules laid down in *State* v. *Auchard,* 22 Mont. 14, 55 Pac. 361, *Barnard Realty Co.* v. *City of Butte,* 48 Mont. 102, 136 Pac. 1064, and *Barnard Realty Co.* v. *City of Butte,* 55 Mont. 384, 177 Pac. 402, and, if it did, it would but constitute a conflict in the evidence, resolved by the jury in favor of plaintiff. There is abundant substantial evidence to the effect that there was no travel and no travel possible over this strip prior to 1923 and no regular travel thereon at any time.

(b) As to the location of the place of the accident, as shown above, there was but a conflict in the evidence, the overwhelming weight of which was to the effect that the accident occurred on the playground, and so the jury decided.

(c) In addition to proving negligence, it was incumbent ▇ upon the plaintiff to show that the negligence was the proximate cause of the injury as a basis for recovery (*Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Kern* v. *Payne,* 65 Mont. 325, 211 Pac. 767); and, if either of two conclusions may equally well be drawn from the testimony offered by the plaintiff, one of which bespeaks freedom from such negligence, the evidence is insufficient to support a recovery. (*Scheytt* v. *Gallatin Valley Milling Co.,* 54 Mont. 565, 172 Pac. 321.)

Measured by the above rules, it cannot be said that Quinton's ▇ failure to sound his horn was an efficient cause of the accident, as there is no evidence to show that, had a warning been given, the result would have been different; it appears to be clear that the boy observed the approaching truck and sought to avoid it (*Stroud* v. *Chicago etc. Ry. Co.*, 75 Mont. 384, 243 Pac. 1089), and, as the testimony in the present case shows that the accident occurred on level icy ground and that a car is at least as likely to skid on such ground with as without chains, it cannot be said that negligence in failing to equip the truck with chains was the proximate cause of the injury.

Again, while it is clear that Quinton could have avoided ▇ the accident by driving a few feet farther to the north, instead of stopping his car, he says that the boy turned north, and he was afraid that, unless he stopped, he might run over the boy. Here the driver was faced with a sudden emergency, in which situation his conduct is to be tested by what an ordinarily prudent person would have done under the circumstances (*Zanos* v. *Great Northern Ry. Co.*, 60 Mont. 17, 198 Pac. 138), and was not chargeable with negligence for failure to adopt the most judicious course as disclosed by subsequent events. (*Carnahan* v. *Motor Transit Co.*, 65 Cal. App. 402, 224 Pac. 143; *Ransom* v. *Union Depot*, 142 Mo. 361, 126 S. W. 785.) However, there is ample evidence, as pointed out above, to warrant the findings, necessarily made by the jury in arriving at their verdict, that Quinton was "cutting across" the playground, knowing of its existence, and was driving where there was no public thoroughfare and where he had no right to be; that he knew that children were skating and coasting, and were in the habit of skating and coasting, upon the area he was about to traverse; that he saw children disporting themselves, and, seeing, he elected to watch the skaters to the south of his line of travel instead of keeping a lookout in the direction he was traveling, which condition existed up to the time he was faced by the sudden emergency. While the oral testimony is to the effect that Quinton was driving "east,"

the testimony of all of the witnesses for the plaintiff as to the spot where the accident occurred warrants a finding that he was bearing to the south in a diagonal course between the Shea house and his destination; the term "east" being used but relatively.

In determining the proximate cause of an injury or accident, we must always look to the succession of events existing in every transaction, more or less dependent each upon the preceding event, and it is the province of the jury to look to such succession of events and ascertain whether they are naturally and probably connected with each other by a continuous sequence or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time. (*Milwaukee etc. Ry.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256.) If this sequence of events leads up to and results in the injury without intervening independent cause, it is the efficient and proximate cause. "The cause of an event is the sum total of the contingencies of every description which, being realized, the event invariably follows. * * * Ordinarily that condition is usually termed *the cause* whose share in the matter is the more conspicuous and is the more immediately preceding and proximate to the event. Where a particular event, according to human experience, is likely to be followed by another particular event, the person whose agency produced the former event is responsible for any injurious consequence which may flow from the latter. The reason is that he ought to have foreseen this consequence." (1 Thompson on Negligence, 45; see, also, *Flynn* v. *Poindexter & Orr Live Stock Co.,* 63 Mont. 337, 207 Pac. 341; *Lundeen* v. *Livingston Electric Light Co.,* 17 Mont. 32, 41 Pac. 995; *Birsch* v. *Citizens' Electric Co.,* 36 Mont. 574, 93 Pac. 940.)

The negligence of Quinton, imputable to defendant, in driving upon and across the playground, was the proximate cause of the accident. The court did not err in refusing to take the case from the jury.

4. Specification 5 predicates error upon the giving of the following instruction: "You are instructed that it is not

incumbent upon the plaintiff to prove all of the acts of negligence alleged in the complaint, to entitle him to a verdict in this case, but if the evidence introduced is such as to satisfy you by a preponderance of all of the evidence herein, that one or more of said acts of negligence so alleged proximately caused the injury to the said C. J. Burns, Jr., then your verdict should be for the plaintiff.''

The instruction correctly states the law and was properly submitted to the jury. (*Walsh* v. *East Butte Copper Min. Co.*, 66 Mont. 592, 214 Pac. 641; *Westlake* v. *Keating Gold Min. Co.*, 48 Mont. 120, 136 Pac. 38; *Michalsky* v. *Centennial Brewing Co.*, 48 Mont. 1, 134 Pac. 307.)

5. Specifications 6, 7, and 8 predicate error upon the court's refusal to instruct the jury that the plaintiff had failed to prove ''that defendant was negligent in the matter of failing to keep a lookout''; that defendant failed to prove that the accident happened on a playground, ''as claimed in plaintiff's complaint to have existed at the time of the accident,'' and had failed to prove that ''defendant was negligent in attempting to cut across or in cutting across a playground.''

As shown above, we find ample evidence to take the case to the jury on each of the issues outlined in the proposed instructions, and therefore no error was committed in refusing the instructions.

Specification No. 9 is not argued, and will therefore be deemed abandoned. (*Lingquist* v. *Seibold*, 62 Mont. 162, 199 Pac. 709.)

6. Specification No. 10 predicates error upon the court's refusal to instruct the jury that, ''if you find from the evidence that the accident would not have happened if the decedent, Clarence J. Burns, Jr., had exercised such care for his own safety as may fairly be expected from the average person of his age and capacity, then you should return a verdict in favor of the defendant.'' The objection to this instruction was twofold: That the negligence of the boy was not made an issue by the answer; and that a child under seven years of age could not be guilty of contributory negligence.

Regardless of whether or not a child under seven years of age can be guilty of contributory negligence which will bar a parent from recovery for its death, no error was committed in refusing to give this instruction, for the following reasons:

In the action instituted by Burns, administrator, the defendant alleged that the boy was guilty of contributory negligence, but herein the only allegation of such negligence is that plaintiff was guilty of contributory negligence in permitting, encouraging, and inciting a child, inexperienced and of such tender years as to be incapable of exercising ordinary care and prudence, to coast upon a public highway where vehicles were accustomed to travel. This allegation exonerates the child from the charge of contributory negligence.

In order to be effective as a defense, contributory negligence must be pleaded with the same degree of particularity as is required from plaintiff in charging defendant's negligence; the act or omission must be stated, must be characterized as negligent, and must be shown to have contributed to the injury complained of. (*Freisheimer* v. *Missoula Creamery Co.*, 64 Mont. 443, 210 Pac. 329.) The question of negligence on the part of the boy was not, therefore, an issue in the case, and was not the subject of an instruction to the jury.

7. The final specification predicates error on the court's denial of a new trial. Under this specification counsel present matters heretofore determined, with the additional contention that the verdict is excessive. The verdict is for $2,500, with interest from the date of the boy's death to the date of judgment, bringing the total award up to approximately $3,000.

Defendant first questions the right of the jury to allow interest on the amount of the award. Under section 8663, Revised Codes of 1921, the allowance of interest "in an action for the breach of an obligation not arising from contract" is in the discretion of the jury. This permissive statute is applicable to tort actions (*Wright* v. *City of Butte*, 64 Mont. 362, 210 Pac. 78; *Phelps* v. *Great Northern Ry. Co.*, 66 Mont. 198,

213 Pac. 610), and where, as here, at least, the damages to be awarded do not include compensation for mental and physical suffering extending over an indefinite period after the injury, but the time of the accrual of the right is fixed by death, there is no obstacle, under such a statute as ours, to the awarding of interest from such date, if the jury see fit to do so. (*Ell* v. *Northern Pac. Ry. Co.*, 1 N. D. 336, 26 Am. St. Rep. 691, 12 L. R. A. 97, 48 N. W: 222; *Central Ry. Co.* v. *Sears*, 66 Ga. 499.)

Defendant contends that the verdict is based upon surmise and conjecture, as no evidence was adduced as to the cost of maintaining and educating the boy, and the jury had no basis for determining the net earning which the father could reasonably expect to receive from his services.

While the measure of damages in such a case is the amount the child would have earned prior to reaching majority, and, on a proper showing, the reasonable expectation of benefits after majority (*Gilman* v. *Dart Hardware Co.*, 42 Mont. 96, 111 Pac. 550), less the cost of maintenance, any award must, of necessity, be based upon conjecture and surmise, and any amount of testimony would be of little aid to the jury. The matter must be left largely to the judgment and common sense of the ordinary jury called to determine it (*Waters-Pierce Oil Co.* v. *Deselms*, 212 U. S. 159, 53 L. Ed. 453, 29 Sup. Ct. Rep. 270), or, as was said by the supreme court of Washington, in declaring that the claim that there was a fatal lack of proof of the value of the prospective services of a child of tender years was without merit: "In such a case it is within the province of the jury, knowing the age, health and capacity of the child and the situation of the parent, to form an estimate of the pecuniary loss to the parent, present or prospective, resulting from the death of the child, and thereon award substantial damages. * * * In the nature of the case, direct evidence of specific pecuniary loss would be impracticable, not to say impossible. To hold that, without such direct evidence, no recovery beyond nominal damages could be had, would render nugatory the statute permitting a recovery for

wrongful death, Rem. & Bal. Code, § 184, * * * as applied to the loss of a child of tender years. (*Ihl* v. *Forty-Second Street etc. R. Co.,* 47 N. Y. 317, 7 Am. Rep. 450) ." (*Sweeten* v. *Pacific Power & Light Co.,* 88 Wash. 679, 153 Pac. 1054.)

Finally it is contended that the verdict is so excessive as to warrant a new trial, and therefore the court erred in denying defendants' motion therefor. We find no merit in this contention. A new trial may be granted in a personal injury case on the ground of excessive damages only when it appears that the amount awarded is so grossly out of all proportions to the injury sustained as to shock the conscience and indicate that the verdict was prompted by passion and prejudice. (*Kelley* v. *John R. Daily Co.,* 56 Mont. 63, 181 Pac. 326.)

In *Liston* v. *Reynolds,* above, this court fixed $3,000 as a reasonable award to a father for the loss of the services of his minor son for less than one year prior to majority, and the books are replete with cases holding reasonable awards of from $2,000 to $3,500 for the death of children of the age of seven years and under. (See collection of cases in 6 Thompson on Negligence, 209; *Sweeten* v. *Pacific Power & Light Co.,* above; *Ticknor* v. *Seattle-Renton Stage Line,* 139 Wash. 354, 47 A. L. R. 252, 247 Pac. 1; *Schaff* v. *Shepert* (Tex. Civ. App.), 196 S. W. 232.)

No reversible error being shown, the judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.